847 F.2d 1315
 49 Fair Empl.Prac.Cas. 1043,
46 Empl. Prac. Dec. P 38,014
Kenneth ROBINSON, Plaintiff-Appellant,
v.
Michael ADAMS, Dianne R. Coe, Georgia McCarthy, Martin
Moshier, Lura Scovil, Joan Wilson, County of
Orange, Orange County Superior Court and
L.B. Utter, Defendants-Appellees.
 No. 85-6533
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted April 6, 1987.
Decided Oct. 13, 1987.
As Amended on Denial of Rehearing
and Rehearing En Banc May 27, 1988.
 
 Kenneth Robinson, Cal., in pro per.
 Lynn Bouslog, Santa Ana, Cal., for defendants-appellees.
 Appeal from the United States District Court for the Central District of California.
 Before WALLACE, SCHROEDER and PREGERSON, Circuit Judges.
 WALLACE, Circuit Judge:
 
 
 1
 Robinson appeals pro se the district court's summary judgment against him on his employment discrimination claims. He contends (1) that he need not prove that defendants had knowledge of his race to sustain a claim of racial discrimination under 42 U.S.C. Sec. 1981 or Title VII of the Civil Rights Act of 1964, 42 U.S.C. Secs. 2000e to 2000e-17, (2) that a genuine issue exists whether the defendants were aware of his race, and (3) that he established a prima facie case of disparate impact. We have jurisdiction pursuant to 28 U.S.C. Sec. 1291, and we affirm.
 
 
 2
 * In July and August 1983, Robinson applied for four positions with the County of Orange and the Orange County Superior Court (Orange County). Orange County denied each application at the initial screening phase. Robinson filed a charge with the Equal Employment Opportunity Commission, alleging a violation of Title VII, and the Commission issued a right-to-sue letter. Robinson filed this action in district court against Orange County and several of its employees (the employees) alleging violations of section 1981 and Title VII. The district court entered summary judgment for all defendants. We review the summary judgment de novo. Lojek v. Thomas, 716 F.2d 675, 677 (9th Cir.1983). We address first Robinson's disparate treatment claim, and then his claim of disparate impact.
 
 II
 
 3
 Under Title VII or under section 1981, a plaintiff must prove intentional discrimination to make out a discrimination claim using a disparate treatment theory. Gay v. Waiters' and Dairy Lunchmen's Union, 694 F.2d 531, 537 (9th Cir.1982) (Gay ). An employer cannot intentionally discriminate against a job applicant based on race unless the employer knows the applicant's race. Robinson contends, however, that he may discharge his prima facie burden of production by offering proof of the four elements articulated in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), and that McDonnell Douglas merely requires proof that he belongs to a racial minority. See id. at 802, 93 S.Ct. at 1824; Gay, 694 F.2d at 538 & n. 5.
 
 
 4
 The McDonnell Douglas test, however, "was never intended to be rigid, mechanized, or ritualistic. Rather, it is merely a sensible, orderly way to evaluate the evidence ... on the critical question of discrimination." Furnco Construction Corp. v. Waters, 438 U.S. 567, 577, 98 S.Ct. 2943, 2949, 57 L.Ed.2d 957 (1978). The McDonnell Douglas test defines one method of proving a prima facie case of discrimination--proof from which a trier of fact can reasonably infer intentional discrimination. See Gay, 694 F.2d at 538. But the McDonnell Douglas elements would not rationally create this inference if, as here, a plaintiff offers proof that he is Black, but there is no showing by direct or indirect evidence that the decision-maker knew this fact.
 
 
 5
 Even accepting this requirement, however, Robinson contends that he can survive a motion for summary judgment because some evidence in the record suggests that Orange County and the employees could have discovered he is Black. On all four of Robinson's applications, he checked a box indicating his race. Nevertheless, "there is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986) (citations omitted) (Liberty Lobby ). We do not believe that Robinson has produced sufficient evidence on the question of the knowledge by Orange County or the employees of his race for a jury to return a verdict in his favor.
 
 
 6
 The following paragraph appeared at the top of that portion of the application which contained racial and other demographic information.
 
 
 7
 Orange County is asking all applicants for positions to complete this form in order to comply with United States government equal employment opportunity requirements. Information you provide will not be used in any way as part of the testing process. This flap will not be duplicated or made available to hiring department. [sic] Data collected is used for statistical purposes and to measure the County's effectiveness of recruiting efforts.
 
 
 8
 (Emphasis in original.) Furthermore, this section of the application appeared on a flap that is described in the record variously as a "tear apart attachment," "inside detachable tab," "tear-off form," and "separate sheet [that was] detached for internal record keeping purposes." The record suggests that either the flap was photocopied as part of the original application and then torn off before the application was sent to the application screener, or a copy of the application which did not show the flap was sent to the application screener, or the flap was folded so that it could not be viewed by the application screener. Since the data on the flap did not contain significant information for statistical purposes, such as the job applied for and the date of application, the employer must have retained a full copy of the application in its records. The key question here is whether the screeners knew the applicant's race. Orange County submitted affidavits from the application screeners who had rejected Robinson's job applications. All of these screeners declared that they were unaware of Robinson's race when they reviewed and rejected his applications. Although the credibility of the application screeners could be a triable issue, Robinson has produced no evidence that places their credibility in doubt. "[N]either a desire to cross-examine an affiant nor an unspecified hope of undermining his or her credibility suffices to avert summary judgment." National Union Fire Insurance Co. v. Argonaut Insurance Co., 701 F.2d 95, 97 (9th Cir.1983).
 
 
 9
 In light of this record, we conclude that there was no genuine dispute as to whether the application screeners were aware of Robinson's race. The applications stated that the demographic information would not be considered as part of the hiring process, and the information was contained on a flap purposefully designed so that it would not be seen by the application screeners. Significantly, Robinson does not point to any evidence tending to show that this procedure resulted in the disclosure of racial information to application screeners in his or any other case. The only evidence in the record, the affidavits of the application screeners, unequivocally suggests that the procedure worked. Robinson's evidence on this issue is "merely colorable" and is not "significantly probative." Liberty Lobby, 106 S.Ct. at 2511. Therefore, we hold that no genuine issue exists as to whether the application screeners were aware of his race. Summary judgment was appropriate on Robinson's intentional discrimination theory.[1]
 
 III
 
 10
 A plaintiff establishes a prima facie case of employment discrimination using a disparate impact theory when he or she shows that a business practice, neutral on its face, had a substantial, adverse impact on some group protected by Title VII. Gay, 694 F.2d at 537. Such proof is usually accomplished by statistical evidence showing "that an employment practice selects members of a protected class in a proportion smaller than their percentage in the pool of actual applicants." Moore v. Hughes Helicopters, Inc., 708 F.2d 475, 482 (9th Cir.1983).
 
 
 11
 Robinson contends he established a prima facie case of discriminatory impact by citing statistics which allegedly show that the percentage of Blacks in Orange County and in surrounding counties is higher than the percentage of Blacks employed by Orange County. Nevertheless, Robinson fails to establish that these general population statistics represent a pool of prospective applicants qualified for the jobs for which he applied. We have consistently rejected the usefulness of general population statistics as a proxy for the pool of potential applicants where the employer sought applicants for positions requiring special skills. See id. at 482-83.
 
 
 12
 In any case, the most probative statistics in the record tend to show an absence of disparate impact: in 1984, although Blacks represented 1.2% of the Orange County population, 1.7% of the Superior Court work force was Black and 2.7% of both the "Professional" and "Official/Administration" positions in the County of Orange were held by Blacks. Robinson argues, however, that his disparate impact theory can survive a motion for summary judgment because he has presented evidence that the Orange County Superior Court did not have any Black male employees. Obviously, since Blacks are not statistically underrepresented in the Orange County Superior Court's work force, Robinson cannot plausibly maintain that the Court's hiring practices have a racially discriminatory impact on Blacks as a whole. Conceivably, the absence of any Black male employees could result from racial stereotyping or have some other link to racial discrimination. Robinson, however, has presented insufficient evidence to suggest this is the case here. His showing that Black males are statistically underrepresented cannot, standing alone, show a racially discriminatory impact on Blacks as a whole. To make out a prima facie case of disparate impact on Black males, Robinson would also have to "identify specific employment practices or selection criteria" and "show the causal relationship between the identified practices and the impact." Atonio v. Wards Cove Packing Co., 810 F.2d 1477, 1482 (9th Cir.1987) (en banc). This, we conclude, he has not done to the degree necessary to survive a motion for summary judgment.
 
 
 13
 Because Robinson has not pointed to evidence creating a genuine dispute about facts material to a prima facie case of disparate impact, summary judgment was appropriate on this issue.
 
 
 14
 AFFIRMED.
 
 
 15
 PREGERSON, Circuit Judge, dissenting.
 
 
 16
 Kenneth Robinson appeals pro se from the district court's grant of summary judgment in favor of defendants. In the summer of 1983, Robinson applied for four separate jobs with the Orange County Superior Court. As part of the job application, Robinson filled out a demographic questionnaire in which he indicated that he is black. This questionnaire is a "tear-off attachment" to the job application and states at the top that the information provided on it will be used for statistical purposes only. Robinson was not hired for any of the four positions, and he brought this suit alleging that he was denied employment with the Orange County Superior Court based on his race. The magistrate who first heard the case recommended that the district court grant summary judgment for defendants on the Title VII "disparate treatment" claim but deny summary judgment on the "disparate impact" claim. The district court partially accepted this recommendation, granting summary judgment for defendants on both claims.
 
 
 17
 We review de novo district court orders granting summary judgment. Darring v. Kincheloe, 783 F.2d 874, 876 (9th Cir.1986). Our review is governed by the same standard used by the district court under Fed.R.Civ.P. 56(c). Id. We must determine, viewing the evidence in the light most favorable to the nonmoving party, whether there are any genuine issues of material fact and whether the district court correctly applied the relevant substantive law. Ashton v. Cory, 780 F.2d 816, 818 (9th Cir.1986).
 
 
 18
 Title VII is "a remedial statute to be liberally construed in favor of the victims of discrimination." Mahroom v. Hook, 563 F.2d 1369, 1375 (9th Cir.1977), cert. denied, 436 U.S. 904, 98 S.Ct. 2234, 56 L.Ed.2d 402 (1978). Particularly where, as here, a layperson brings a Title VII action pro se, a liberal construction of the statute's technical requirements is appropriate. Rice v. Hamilton Air Force Base Commissary, 720 F.2d 1082, 1084 (9th Cir.1983).
 
 I. Disparate Treatment
 
 19
 As the majority states, under Title VII or section 1981 a plaintiff must establish intentional discrimination to show disparate treatment. I agree with the majority that, notwithstanding the literal language of McDonnell Douglas, a finding of intentional discrimination logically requires a showing that defendants knew plaintiff's race. In this case, then, to pursue a claim of disparate treatment, Robinson must prove that Orange County Superior Court employees knew he was black when they considered his applications for employment. I would hold that the district court erred in granting summary judgment on the disparate treatment claim because there is a genuine issue of material fact whether the Orange County employees reviewing Robinson's application actually knew he was black.
 
 
 20
 In support of its conclusion that there is no genuine factual issue on this point, the majority cites (1) the language at the top of the demographic questionnaire attached to the employment application stating that racial and other information would not be considered in the employment decision, (2) the fact that the questionnaire appeared on a detachable flap that was part of the application form, and (3) affidavit testimony by County employees who reviewed Robinson's applications indicating that when they decided not to hire Robinson they were unaware of his race.
 
 
 21
 The majority neglects to mention the evidence Robinson provided to counter the evidence provided by the County. In his Excerpts of Record, Robinson provided copies of his employment applications received from the County via the discovery process. On the pages in the Excerpt marked 141, 150, 163, and 279, Robinson's applications are reproduced. In each case, the demographic questionnaire, complete with Robinson's "x" indicating that he is black, is still attached to the application. In my view, this evidence indicates that the County employees who considered Robinson's application may have known he was black.
 
 
 22
 The evidence provided by the County does not undermine the probity of the raw fact that Robinson's racial information was still attached to his job application. The first two items cited by the majority are of negligible value for determining what the reviewing employees actually knew. The language at the top of the questionnaire is not determinative of how applications were in fact processed. Similarly, the fact that the applicant's racial information was provided on a detachable form indicates little about the County's treatment of race in the job application process. If the County had an entirely separate demographic questionnaire used for gathering statistics, it might demonstrate the County's desire to ensure that employees reviewing the applications would be ignorant of each applicant's race. But by keeping this information physically attached to other employment information, the County runs a risk that employees making employment decisions will be aware of racial and other demographic factors that might lead to discrimination.
 
 
 23
 The County employees' affidavits indicating that they were unaware of Robinson's race is the only viable evidence the County has provided to dispute Robinson's allegation that the employees knew of his race. As the majority recognizes, the credibility of these employees is a matter for the trier of fact. Although the credibility issue alone probably should not defeat defendants' summary judgment motion, the credibility question coupled with Robinson's concrete evidence that the employees may have known of his race is sufficient to allow his disparate treatment claim to withstand summary judgment.
 
 II. Disparate Impact
 
 24
 Robinson also brought a Title VII claim under the disparate impact theory. The district court rejected the magistrate's recommendation that defendants' summary judgment motion on this claim be rejected. I would reverse the district court's grant of summary judgment on this issue.
 
 
 25
 Under a disparate impact approach, an employee must show that facially neutral employment practices have a "significantly discriminatory" impact upon a group protected by Title VII. Connecticut v. Teal, 457 U.S. 440, 446, 102 S.Ct. 2525, 2530, 73 L.Ed.2d 130 (1982). The starting point for disparate impact analysis is identifying the appropriate candidate pool and its racial makeup. Moore v. Hughes Helicopters, Inc., 708 F.2d 475, 482 (9th Cir.1983). Generally, the most appropriate statistical base is the actual pool of applicants. Id.
 
 
 26
 Robinson has shown that the Orange County Superior Court has no black male employees, and that the overall representation of blacks (all women) among its employees is 1.7%. The majority states that there is no statistical support for Robinson's assertion that blacks are underrepresented in the court's work force. To the contrary, I believe that Robinson has raised a genuine issue of material fact on whether blacks and particularly black males are proportionally represented in the court's work force.
 
 
 27
 Defendants maintain that their 1.7% rate of black employment is more than sufficient, in light of the fact that blacks constitute only 1.2% of Orange County's population. The County has proferred no justification for its reliance on general population statistics rather than on statistics concerning the actual pool of applicants for the positions for which Robinson applied. Given the startlingly low levels of black employment in the Orange County Superior Court, I would hold that the absence of statistics about the candidate pool by itself justifies reversing the grant of summary judgment for defendants.
 
 
 28
 Even assuming that general population statistics are appropriate, it is not at all clear under Hazelwood School Dist. v. United States, 433 U.S. 299, 313, 97 S.Ct. 2736, 2744, 53 L.Ed.2d 768 (1977), that the Orange County population is the "relevant labor market" required for statistical comparisons in disparate impact cases. Orange County is not an isolated community. Although the United States census bureau identifies Orange County as a Standard Metropolitan Statistical Area, the bureau also identifies Orange County as part of the Los Angeles-Long Beach-Anaheim standard consolidated statistical area. Being part of the greater Los Angeles metropolitan area, Orange County presumably draws its work force from a larger population pool than the County alone. The evidence adduced thus far supports this presumption. For example, Orange County advertised the positions for which Robinson applied in the Los Angeles Times and the Orange County Register, both of which are widely circulated throughout the greater Los Angeles area.
 
 
 29
 I would hold, in keeping with Hazelwood, that this case should go back to the district court "for further findings as to the relevant labor market." Id.
 
 
 30
 Robinson contends that even if there were factual support for defendants' argument that blacks are proportionately represented in the court's work force, the evidence nonetheless demonstrates disparate impact on black males. The Supreme Court stated in Connecticut v. Teal, 457 U.S. 440, 451, 455, 102 S.Ct. 2525, 2532, 2535, 73 L.Ed.2d 130 (1982):
 
 
 31
 Title VII strives to achieve equality of opportunity by rooting out "artificial, arbitrary, and unnecessary" employer-created barriers to professional development that have a discriminatory impact upon individuals.
 
 
 32
 * * *
 
 
 33
 It is clear that Congress never intended to give an employer license to discriminate against some employees on the basis of race or sex merely because he favorably treats other members of the employees' group. We recognized in Los Angeles Dept. of Water & Power v. Manhart, 435 U.S. 702, 98 S.Ct. 1370, 55 L.Ed.2d 657 (1978), that fairness to the class of women employees as a whole could not justify unfairness to the individual female employee because the "statute's focus on the individual is unambiguous." Id. [98 S.Ct.] at 1375....
 
 
 34
 The stark fact is that the Orange County Superior Court does not employ a single black male. This is strong evidence that defendants have discriminated against black males by creating an artificial barrier to their professional development, thereby frustrating Title VII's goals of achieving equality of opportunity. Like the behavior in Manhart, the Orange County Superior Court's failure to employ a single black male blatantly disregards the rights of the individual recognized and protected in Title VII. I would hold that the evidence presented by Robinson is sufficient to make out a prima facie case of disparate impact on black males. Cf. Jefferies v. Harris County Community Action Ass'n, 615 F.2d 1025, 1032-35 (9th Cir.1980) (black females are a protected class under Title VII). Accordingly, I dissent from the majority's view to the contrary.
 
 
 
 [1]
 The dissent correctly points out that the record before us includes copies of Robinson's four applications still containing the detachable tab on which Robinson's race is noted. There is nothing in the record to suggest that these copies are in fact the copies of the applications that the application screeners actually saw. The form itself, as we observed above, indicates that this portion of the application would not be "duplicated" or otherwise made available to the hiring department. The most reasonable inference from this statement is that the County generally keeps the original applications on file, and sends a duplicate copy to the screeners. Robinson has presented nothing more than his conclusory assertion, which he admits is an assumption, that the copy of the application form he received through the discovery process is the same as what was sent to the application screeners. The screeners all declared that they were unaware of Robinson's race--i.e., that they did not see the tab containing his race identification. In the absence of some evidence that the copies of the form Robinson procured through discovery are the same as those submitted to the application screeners, we are unable to believe that a jury could decide, based on the preponderance of the evidence, that Robinson's copy of the application was the same as what the screeners saw and therefore that the screeners were aware of his race. See Liberty Lobby, 106 S.Ct. at 2510-12. Thus, in light of the screener's testimony, there is no triable issue of fact