15 F.3d 1082
NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
 Charles BANKS and Joseph Dyrcz, Plaintiffs-Appellants,
v.
PRUDENTIAL CALIFORNIA REALTY; Rodeo Realty; Jon Douglas
Co.; Patricia Temkin,; Nicky Borghei; Sandra
Deering; Jan Cohen; Anita Finklestin;
Gary Lee Evans, Defendants-Appellees,
Charles BANKS and Joseph Dyrcz, Plaintiffs-Appellants,
v.
PRUDENTIAL CALIFORNIA REALTY; Patricia Temkin; Nicky
Borghei; Sandra Deering; Gary Lee Evans,
Defendants-Appellees.
 Nos. 92-55750, 92-56037.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Dec. 7, 1993.
Decided Jan. 10, 1994.
 
 Before: FLETCHER, PREGERSON, and HALL, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Charles Banks and Joseph Dyrcz, an interracial, homosexual couple, appeal a jury verdict for the Prudential California Realty and individual Prudential agents [hereinafter "Prudential"]. Banks and Dyrcz alleged that Prudential violated Title VIII of the Civil Rights Act (42 U.S.C. Secs. 3601 et seq.), 42 U.S.C. Secs. 1981-1982, and California law, when Prudential did not rent a townhouse to Banks and Dyrcz, even though they were financially qualified, and when two white individuals were able to lease the property at a lower monthly rate. Prudential cross-appeals the district court's denial of its request for attorneys' fees and Rule 11 sanctions. We have jurisdiction over both the appeal and the cross-appeal under 28 U.S.C. Sec. 1291. We affirm.
 
 BACKGROUND
 
 3
 Banks, a black man, applied to rent residential property in Santa Monica, California, with Dyrcz, his white homosexual companion. Prudential acted as the listing broker for the townhouse owner Gary Evans ("Evans"), a black man who lived in New York. After Banks and Dyrcz were rejected as tenants, they filed a complaint for damages, declaratory relief and an injunction, alleging that in denying them the opportunity to lease the townhouse, Prudential had discriminated against them on the basis of race and sexual orientation, and in so doing had violated federal and state laws.[1] At trial, the jury heard the following facts and testimony:
 
 
 4
 On April 17, 1991, Banks and Dyrcz completed a tenant application form for Prudential sales agents Patricia Temkin ("Temkin") and Nicky Borghei ("Borghei"), that described their employment and credit histories. (CR 245; ER 31). Both Banks and Dyrcz had satisfactory credit. (CR 308).
 
 
 5
 On April 21, 1991, Banks and Dyrcz met with Temkin and Borghei and signed a proposed, written lease agreement, unexecuted by Evans, which constituted an offer to rent the property. (See CR 255-57). Banks and Dyrcz offered $1795.00 monthly rent and a $500 security deposit, and they requested that Evans remove his refrigerator and washer and dryer. (CR 256-57). They gave Temkin and Borghei a check for $4,090.00 to cover first and last months' rent plus a $500.00 security deposit. (CR 245). Banks' and Dyrcz's offer of $1,795.00 per month matched the rental amount that Evans agreed to in his listing agreement with Prudential. (CR 336). However, as Dyrcz testified at trial, Dyrcz knew and understood that the lease offer varied from the rental terms required by Evans. Dyrcz knew that Evans wanted a full month's rent ($1,795.00) rather than $500.00 as a security deposit, but wanted to negotiate with Evans. (CR 263-64). Dyrcz also knew that Evans wanted the refrigerator, washer, and dryer to remain in the townhouse, rather than be removed. (CR 266).
 
 
 6
 The jury heard Temkin and Borghei testify that they did not accept and sign the lease on behalf of Evans, because they lacked authority to do so. (CR 311-12). Nor did they represent that they had authority to sign the lease or that Banks and Dyrcz could move in. Id.[2] Instead, Temkin and Borghei submitted the lease offer to Ron Smith ("Smith"), the listing agent, so that he could get approval from Evans. (CR 309-10). Neither agent ever discussed Banks' or Dyrcz's race with anyone at Prudential or with Smith. (CR 312).
 
 
 7
 When Smith contacted Evans to discuss the offer, Evans said he wanted to ask for higher rent, closer to $1,950.00 per month. (CR 301-02). Previously, Evans had sent Smith a letter stating that he thought the $1,795.00 per month listing price was too low. (CR 348-49). Smith disagreed. (CR 302). Evans wrote this letter to Smith before he learned that Banks and Dyrcz or any one else was interested in renting the townhouse. (CR 348). The jury heard Smith testify that, after Evans had received Banks' and Dyrcz's offer, Evans did not make a counter-offer or ask Smith to request more money from Banks and Dyrcz. (CR 299, 301). Next, Smith testified:
 
 
 8
 In retrospect, a lot of it could have been a personality conflict that I had with him and at the time I came right out and said, 'Listen, if you're not comfortable with me or you're not comfortable with my company, then we're not doing anybody any good--either of us any good. So let me know.' And he said, 'I'll need to think about that and get back with you.'
 
 
 9
 (CR 301-02). Evans never responded to the offer.
 
 
 10
 In late April or early May, 1991, Evans cancelled the Prudential listing for the townhouse, due mainly to a personality conflict with Smith. (CR 344-46, 348-49). Temkin and Sandra Deering ("Deering") believed that the property was off the market and conveyed that information to Banks and Dyrcz. (ER 12-15). In fact, Evans never took the property off the market; he relisted it with Jon Douglas as real estate broker. (CR 337-38).[3] Jon Douglas listed the townhouse for $1,825.00 per month. (See ER 83 (authorization to lease)). For a short time, both Prudential and Jon Douglas listed the property. (ER 16). Banks and Dyrcz did not reapply to Jon Douglas to rent the property.
 
 
 11
 In June, 1991, Jon Douglas rented the property to two white, heterosexual males, Martin Hartigan ("Hartigan") and Michael Colglazier ("Colglazier"). Hartigan and Colglazier agreed, by the lease agreement, to pay only $1,700.00 per month rent. Even though the townhouse was listed for $1,825.00 per month, Hartigan and Colglazier refused to offer more than $1,700.00, and Evans accepted their offer. (CR 547-49).
 
 
 12
 Both Banks and Dyrcz testified at trial on the subject of race discrimination. Banks testified that he was personally aware of no facts that would indicate that Deering had discriminated against him on the basis of race. (CR 276-77). In support of his contention that Borghei had discriminated against them, Banks relied on the following: "They said we had the place. They said we were good clients, good tenants. They said that the place was ours and that we could move in on the 15th and that didn't happen." (CR 277-78). And, when asked about alleged race discrimination by Temkin, Banks responded only: "Why don't we have the place?" (CR 278-79). Dyrcz testified similarly: He said Temkin told them that he and Banks were well-qualified, and he was given no reason for not getting the townhouse after they believed they had a lease. (CR 247) ("I just feel we were discriminated against because of not having the property when we were granted it."). Banks further testified that the subject of race never came up in his dealings with Borghei and Temkin and that nothing in his and Dyrcz's lease application indicated their race. (CR 280). Finally, Banks admitted that he could only speculate that Prudential agents told Evans, or that Evans knew, that he was black. (CR 286-87).
 
 
 13
 After hearing all of the stated facts and testimony, the jury returned a unanimous verdict for Prudential. Banks and Dyrcz appeal the judgment based on: (1) the district court's exclusion of Hartigan's deposition from evidence, and (2) the district court's refusal to give a proposed jury instruction regarding a prima facie case of housing discrimination. Prudential cross-appeals the district court's denial of its request for attorneys' fees and for Rule 11 sanctions against Banks and Dyrcz.
 
 ANALYSIS
 1. Banks' and Dyrcz's Appeal
 
 14
 A. District Court's Exclusion of Deposition Evidence
 
 
 15
 Banks and Dyrcz challenge the district court's refusal to allow a deposition into evidence. We review evidentiary rulings for an abuse of discretion and do not reverse absent prejudice. Roberts v. College of the Desert, 870 F.2d 1411, 1418 (9th Cir.1988) (citation omitted).
 
 
 16
 The district court refused to allow Banks and Dyrcz to introduce the deposition of Martin Hartigan under the former testimony exception to the hearsay rule.[4] To rely on the exception, a proponent of hearsay evidence must prove that the declarant witness is "unavailable" as defined in Federal Rules of Evidence Sec. 804(a). In relevant part, a witness is unavailable, if he or she "is absent from the hearing and the proponent of [his or her] statement has been unable to procure [his] attendance ... by process or other reasonable means." Fed.R.Evid. Sec. 804(a)(5). The proponent must prove that he or she made a good faith, reasonable attempt to secure the witness' attendance at trial.
 
 
 17
 In this case, Banks and Dyrcz contend that Hartigan was unavailable because they attempted on eight occasions, without success, to serve him with a subpoena to appear at trial. The process server, however, made all eight attempts to serve the subpoena within three days before trial. The process server went to Hartigan's residence and left telephone messages on Hartigan's answering machine beginning on the Friday before Monday's trial; he never tried to serve Hartigan at work. The court ruled that the failed attempts were made too close to trial, and thus, did not suffice to prove that Hartigan was unavailable. We conclude that the court did not abuse its discretion by this ruling; Banks and Dyrcz might have been able to serve Hartigan had they made earlier attempts. In any event, Banks and Dyrcz offer no evidence that they were prejudiced by the exclusion of the deposition from evidence.
 
 
 18
 B. District Court's Refusal to Give a Proposed Jury Instruction Regarding a Prima Facie Case of Housing Discrimination
 
 
 19
 Intentional discrimination on the basis of race violates the Fair Housing Act, 42 U.S.C. Secs. 1981-1982, and the Unruh Civil Rights Act. The district court instructed the jury that, to decide whether the defendants intentionally discriminated against the plaintiffs on the basis of race, it should consider whether the plaintiffs proved all of the following facts:
 
 
 20
 (1) that plaintiffs are members of a racial minority;
 
 
 21
 (2) that the plaintiffs applied for and were qualified to rent the Property;
 
 
 22
 (3) that the application to rent the Property was rejected or the Property was otherwise made unavailable to plaintiffs;
 
 
 23
 (4) that at the time the Property was made unavailable to plaintiffs, the defendant knew the plaintiffs' race;
 
 
 24
 (5) that after the Property became unavailable to the Plaintiffs, the defendant continued to seek tenants for the Property.
 
 
 25
 Jury Instruction No. 28 (ER 140-41). At trial, Banks and Dyrcz objected to the fourth and fifth prongs of the instruction, arguing that when they were included, the instruction misstated the controlling law on housing discrimination. (ER 120-21). "Whether a jury instruction misstates the elements that must be proved at trial is a question of law that is reviewed de novo." Caballero v. City of Concord, 956 F.2d 204, 206 (9th Cir.1992) (citation omitted). In a civil case, an error in instructing the jury does not require reversal if the error more probably than not is harmless. Id.
 
 
 26
 Banks and Dyrcz urged the court to instruct on the four-element test adopted in Phiffer v. Proud Parrot Motor Hotel, Inc., 648 F.2d 548 (9th Cir.1980). In Phiffer, we stated that to establish a prima facie case under 42 U.S.C. Sec. 1982, a plaintiff must prove:
 
 
 27
 (1) that he or she is a member of a racial minority;
 
 
 28
 (2) that he or she applied for and was qualified to rent or purchase certain property or housing;
 
 
 29
 (3) that he or she was rejected; and
 
 
 30
 (4) that the housing or rental opportunity remained available thereafter.
 
 
 31
 Phiffer, 648 F.2d at 551 (adapting the elements of a prima facie case for Title VII employment discrimination, from McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), and holding that black male plaintiff met prima facie case: He proved that he applied to rent office space, offered a deposit, was told to wait until the next morning, at which time he was told that the office was no longer available, and it was made available to a white applicant).
 
 
 32
 The district court's instruction was not erroneous. In Robinson v. Adams, 847 F.2d 1315 (9th Cir.1987), cert. denied, 490 U.S. 1105 (1989), plaintiff contended, much as Banks and Dyrcz contend here, that there was no requirement that he show that defendants knew his race. We rejected that argument.
 
 
 33
 An employer cannot intentionally discriminate against a job applicant based on race unless the employer knows the applicant's race.... [T]he McDonnell Douglas elements would not rationally create [an] inference [of intentional discrimination] if, as here, a plaintiff offers proof that he is Black, but there is no showing by direct or indirect evidence that the decision-maker knew this fact.
 
 
 34
 Robinson, 847 F.2d at 1316 (emphasis added).
 
 
 35
 Even if we were to find error in the jury instruction, it would be harmless error. Prudential produced ample evidence of a reason other than race to explain why Banks and Dyrcz did not become tenants. In particular, Prudential showed that, without responding to Banks' and Dyrcz's offer, Evans cancelled the Prudential listing due to a personality conflict with Smith, and that the townhouse was no longer available through Prudential. As the district court instructed, the jury was required to find for Prudential unless it found, "considering all of the evidence in the case, that the plaintiffs [had] proved that the reason given by [Prudential] was not the true reason for [its] conduct." Jury Instruction No. 28. Banks and Dyrcz had the ultimate burden of persuasion on intentional discrimination. Even if the district court had not required Banks and Dyrcz to prove knowledge of race to establish a prima facie case, they still would have had to prove such knowledge to rebut Prudential's proffered nondiscriminatory reason.
 
 2. Prudential's Cross-Appeal
 
 36
 A. District Court's Denial of Prudential's Motion for Attorneys' Fees
 
 
 37
 We review for abuse of discretion the district court's denial of Prudential's motion for attorneys' fees pursuant to 42 U.S.C. Sec. 1988 (attorneys' fees to prevailing party in federal civil rights lawsuit).[5] See Oviatt v. Pearce, 954 F.2d 1470, 1481 (9th Cir.1992). To award attorneys' fees under 42 U.S.C. Sec. 1988 to a prevailing defendant, the district court must find that the plaintiff's action was "frivolous, unreasonable, or without foundation." Christiansburg Garment Co. v. E.E.O.C., 434 U.S. 412, 422 (1978). If it makes this finding, the court may, in its discretion, award attorneys' fees to the prevailing defendant. Id. We have never found that a district court abused its discretion by refusing to award attorneys' fees to a prevailing civil rights defendant. Maag v. Wessler, 993 F.2d 718, 721 (9th Cir.1993).
 
 
 38
 Prudential contends, as it did to the trial court, that Banks' and Dyrcz's sexual orientation and race discrimination claims were frivolous. Banks and Dyrcz dropped their sexual orientation discrimination claim before trial, but it was not frivolous for them initially to pursue the claim, because such claims are actionable under the Unruh Civil Rights Act. See, e.g., Beaty v. Truck Ins. Exch., 6 Cal.App. 4th 1455, 1460, 8 Cal.Rptr.2d 593, 596 (collecting authorities).[6]
 
 
 39
 Furthermore, the district court did not err in finding that the race discrimination claim was not frivolous, or that Banks and Dyrcz continued to litigate after they should have become aware that they had no basis for their claim. As the district court noted, it was reasonable for Banks and Dyrcz to infer that Prudential did not rent to them because Banks is black. (CR 517). We also agree with the district court that the jury needed to hear testimony from both sides to decide whether to believe Prudential that Banks' race did not cause Prudential to make the townhouse unavailable to Banks and Dyrcz. (CR 517-18). Thus, even though the evidence to support a race discrimination claim was "rather thin," (CR 517), the district court did not abuse its discretion by denying Prudential's motion.[7]
 
 
 40
 B. District Court's Denial of Prudential's Request For Rule 11 Sanctions
 
 
 41
 We review for abuse of discretion the district court's refusal to impose sanctions under Fed.R.Civ.P. 11. Cooter & Gell v. Hartmarx Corp., 496 U.S. 384, 405 (1990). Rule 11 requires that an attorney sign a pleading, motion, or other paper, only if, "to the best of [his] knowledge, information and belief formed after reasonable inquiry[,] it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law...." Fed.R.Civ.P. 11. For violations, Rule 11 provides that the court shall impose a sanction, which may include an order to pay the opposing party's resulting, reasonable expenses, including reasonable attorneys' fees.
 
 
 42
 This court has held that the Rule 11 standard is identical to the standard used to determine whether or not a prevailing civil rights defendant is entitled to attorneys' fees. Zaldivar v. City of Los Angeles, 780 F.2d 823, 831 (9th Cir.1986), abrogated on other grounds, 496 U.S. 384 (1990). Thus, for the reasons discussed above, we conclude that the district court did not err in declining to impose Rule 11 sanctions.[8]
 
 
 43
 3. Parties Requests For Attorneys' Fees on Appeal
 
 
 44
 Banks and Dyrcz request an attorneys' fees award, but do not cite any authority for their request. They move, in the alternative, for an extension of time to enable them to brief the issue. We deny the fees request pursuant to Ninth Circuit Rule 28-2.3.
 
 
 45
 Prudential seeks attorneys' fees and double costs pursuant to Ninth Circuit Rule 39-1, Federal Rules of Appellate Procedure 38, and 28 U.S.C. Sec. 1927. Prudential requests that we sanction Banks and Dyrcz for bringing a frivolous appeal. Because the appeal is not frivolous, we deny the request. Even if we had concluded otherwise, we would deny the request in the exercise of our discretion.
 
 
 46
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 In particular, Banks and Dyrcz alleged that Prudential violated Title VIII of the Civil Rights Act (42 U.S.C. Sec. 3601 et seq.), 42 U.S.C. Secs. 1981-1982, California Fair Employment and Housing Act (Cal.Gov't Code Secs. 12900 et seq.), Unruh Civil Rights Act (Cal.Civil Code Sec. 51), California Unfair Business Practices Statute (Cal.Bus. & Prof.Code Secs. 17200 et seq.), and that Prudential committed the common law tort of intentional infliction of emotional distress. (CR 2-14). Banks and Dyrcz also named Jon Douglas and its agents as defendants, but the court dismissed the claims against them before trial. Before trial, Banks and Dyrcz notified Prudential that they would not pursue their claims of discrimination on the basis of sexual orientation. (Wilson Decl., CR 85-86)
 
 
 [2]
 The court struck Dyrcz's statement at trial that Temkin told them that they had the property and could move in on May 15th. (ER 49)
 
 
 [3]
 The new listing did not become effective until after May 10, 1991, even though Evans spoke with Jon Douglas agency in late April or early May. (CR 159, 337-38)
 
 
 [4]
 This exception is codified in Fed.R.Evid. 804(b)(1), which provides that when a witness is unavailable, that witness' former testimony may be admitted if it was "given ... in a deposition taken in the course of the same or another proceeding, [and] if the party against whom the testimony is now offered ... had an opportunity and similar motive to develop the testimony by direct, cross, or redirect examination."
 
 
 [5]
 Prudential does not appeal the district court's denial of its request for attorneys' fees under Cal.Gov't Code Sec. 12965(b)
 
 
 [6]
 In light of the Unruh Act, Prudential's insistence at oral argument that there is no statutory basis for a sexual orientation discrimination claim is baffling
 
 
 [7]
 Prudential challenges the district court's finding that "Plaintiffs proved at trial that they had fulfilled the terms required to rent defendant Evans' apartment...." (CR 517). Prudential points out that the terms plaintiffs offered in fact varied from Evans' terms: the security deposit they offered was lower, and they asked to have the refrigerator and the washer and dryer removed. Those terms, however, had been represented to plaintiffs to be "negotiable." It was not unreasonable of plaintiffs to suspect discrimination when, instead of negotiation, they found that the property was withdrawn from the broker with whom they had been working, and then later was leased to other people for a lower price
 
 
 [8]
 In light of the identity between the Rule 11 standard and the Sec. 1988 standard we reject Prudential's argument that the district court erred by analyzing Prudential's Rule 11 motion under 28 U.S.C. Sec. 1927. Assuming Sec. 1927 sets forth a standard that is different in some relevant way, we hold that Prudential's fee request was nevertheless properly denied under the Sec. 1988/Rule 11 standard