**Surinder CHANDOKE, Plaintiff,**

v.

**ANHEUSER–BUSCH, INC., Defendant.**

**Civ. No. 91–1460.**

United States District Court,
D. New Jersey.

Feb. 2, 1994.

Lanier Williams, Philadelphia, PA, for plaintiff.

John K. Bennett, David J. Reilly, Carpenter, Bennett & Morrissey, Newark, NJ, for defendant.

## OPINION

BROTMAN, District Judge:

Presently before the court is the motion of defendant, Anheuser–Busch, Inc. ("ABI") for partial summary judgment. For the reasons set forth below, defendant's motion is denied.

**1.** Brink never met Chandoke. Chandoke dep. at 213. Furthermore, no other ABI representative

### I. *Factual Background*

Born in India, and a United States citizen since 1988, plaintiff Surinder Chandoke ("plaintiff," or "Chandoke") alleges that ABI committed racial and national origin discrimination when it rejected his job application. Deposition Transcript of Surinder Chandoke [hereinafter "Chandoke dep."] at 14–15.

On March 5, 1989, ABI ran an advertisement in the Philadelphia Inquirer seeking supervisors for the Brewing Department at its Newark brewery. Stipulated Facts, Proposed Joint Final Pretrial Order [hereinafter "Stipulated Facts"], ¶ 4. On or about March 16, 1989, Chandoke responded to the advertisement by submitting his resume, without a cover letter, to ABI's Newark brewery. Chandoke dep. at 169–70; Affidavit of Timothy J. Brink [hereinafter "Brink Aff."], ¶ 4. Chandoke prepared this resume specifically for the position "Brewing/Process Supervisor" with ABI. *Id.* at 178. The resume was one page, with the name "S.K. Chandoke" at the top. Resume of S.K. Chandoke (Affidavit of John K. Bennett, Exhibit B). The resume represented that Chandoke was educated in Scotland, and had worked in India and New Jersey. *Id.* The resume, did not, however, indicate any employment after July 1983. *Id.*

On April 20, 1993, Timothy J. Brink, then Assistant Manager of Employee Relations at ABI's Newark Brewery, telephoned Chandoke and asked him about his resume and prior employment.[1] Brink Aff., ¶ 3; Stipulated Facts, ¶ 7; Chandoke dep. 180–181.

Specifically, Brink asked him about the six-year gap in his resume. Chandoke dep. at 183. Chandoke told Brink that he had worked in a delicatessen, which he had just sold, and that he had been doing other odd jobs. *Id.* at 182, 184, 188–89. ABI did not invite Chandoke to its Newark brewery to fill out an employment application or to be interviewed. Stipulated Facts, ¶ 9. Brink sent a letter to Chandoke dated May 11, 1989 informing Chandoke that he would not be selected for employment at "this time." *Id.* at ¶ 10.

ever spoke to Chandoke. Stipulated Facts, ¶ 8.

Chandoke subsequently filed a complaint in federal court. Count I alleges that ABI violated Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C.A. § 2000e *et seq.* (West 1981). Count II, the focus of this motion, alleges that ABI violated 42 U.S.C.A. § 1981 (West 1981).

## II. *Legal Discussion*

### A. *Summary Judgment Standard*

■ The standard for granting summary judgment is a stringent one. A court may grant summary judgment only when the materials of record "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ. p. 56(c); *see Hersh v. Allen Prods. Co.,* 789 F.2d 230, 232 (3d Cir.1986); *Lang v. New York Life Ins. Co.,* 721 F.2d 118, 119 (3d Cir.1983). In deciding whether there is a disputed issue of material fact the court must view all doubt in favor of the non-moving party. *Meyer v. Riegel Prods. Corp.,* 720 F.2d 303, 307 n. 2 (3d Cir.1983), *cert. denied,* 465 U.S. 1091, 104 S.Ct. 2144, 79 L.Ed.2d 910 (1984); *Smith v. Pittsburgh Gage & Supply Co.,* 464 F.2d 870, 874 (3d Cir.1972). The threshold inquiry is whether there are "any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986).

■ Supreme Court decisions mandate that "a motion for summary judgment must be granted unless the party opposing the motion can produce evidence which, when considered in light of that party's burden of proof at trial, could be the basis for a jury finding in that party's favor." *J.E. Mamiye & Sons, Inc. v. Fidelity Bank,* 813 F.2d 610, 618 (3d Cir.1987) (Becker, J., concurring) (citing *Anderson,* 477 U.S. 242, 106 S.Ct. 2505, and *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). Moreover, once the moving party has carried its burden of establishing the absence of a genuine issue of material fact, "its opponent must do more than simply show that there is some metaphysical doubt as to material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1355, 89 L.Ed.2d 538 (1986). Thus, if the non-movant's evidence is merely "colorable" or is "not significantly probative," the court may grant summary judgment. *Anderson,* 477 U.S. at 249–50, 106 S.Ct. at 2510–11.

### B. *Section 1981 Claim*

Section 1981 provides that:

All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

42 U.S.C.A. § 1981 (West 1981).

■ Section 1981 only applies to racial discrimination, not to discrimination based "solely on the place or nation of ... origin."[2] *Saint Francis College v. Al–Khazraji,* 481 U.S. 604, 613, 107 S.Ct. 2022, 2028, 95 L.Ed.2d 582 (1987), *reh'g denied,* 483 U.S. 1011, 107 S.Ct. 3244, 97 L.Ed.2d 749 (1987). Defendants argue that because "Chandoke's discrimination claim really is a national ori-

---

**2.** Although Indians are technically classified as "Caucasian," they may still state a claim under Section 1981. *See St. Francis College,* 481 U.S. 604, 107 S.Ct. 2022 (1986) (A person of Arab ancestry, although Caucasian, may seek protection under Section 1981). In *St. Francis College,* the Supreme Court rejected a strict definition of "race," as encompassing only the Caucasoid, Mongoloid, and Negroid races. Instead, the Court found that "Congress intended to protect from discrimination identifiable classes of per-

sons who are subjected to intentional discrimination solely because of their ancestry or ethnic characteristics." *Id.* at 613, 107 S.Ct. at 2028. The Court further found that Section "1981, 'at a minimum' reaches discrimination against an individual 'because he or she is genetically part of an ethnically and physiognomically distinctive grouping of *homo sapiens.'" Id.* However, "a distinctive physiognomy is not essential to qualify for § 1981 protection." *Id.*

gin claim, as it has been pled and pursued throughout this four-year-old matter," summary judgment must be granted. Def. Reply Br. at 3.

In *Von Zuckerstein v. Argonne Nat. Lab.*, defendants moved for dismissal, similarly arguing that the "heart and soul" of plaintiffs' Section 1981 claim was discrimination on the basis of national origin. 760 F.Supp. 1310, 1312 (N.D.Ill.1991). The court held that because the complaint included allegations of racial, as well as national origin, discrimination, plaintiffs stated an actionable claim under Section 1981. *Id.*

Chandoke alleges not only national origin discrimination, but racial discrimination as well. He alleges that ABI "treated [him] differently than certain other applicants because of his race and national origin." Complaint, ¶ 18. Chandoke also contends that ABI's "acts and practices set forth [in the complaint] constitute intentional race and national origin discrimination against [him]." *Id.* at ¶ 23.

Such allegations are sufficient to state a claim for racial discrimination under Section 1981. *See Von Zuckerstein*, 760 F.Supp. at 1313; *see also Adames v. Mitsubishi Bank, Ltd.*, 751 F.Supp. 1548, 1560 (E.D.N.Y.1990) (plaintiff "clearly stated an actionable claim under section 1981" by "alleging racial as well as national origin discrimination."). Nonetheless, ABI argues that Count II is untenable, because Brink did not know Chandoke's race when he rejected Chandoke's application.

■ Under Section 1981, a plaintiff must prove that the defendant *intentionally* discriminated against him on the basis of race. *Goodman v. Lukens Steel Co.*, 482 U.S. 656, 665 n. 10, 107 S.Ct. 2617, 2623 n. 10, 96 L.Ed.2d 572 (1987); *Robinson v. Adams*, 847 F.2d 1315, 1316 (9th Cir.1988), *cert. denied*, 490 U.S. 1105, 109 S.Ct. 3155, 104 L.Ed.2d 1018 (1989). Logically, "an employer cannot intentionally discriminate against a job applicant based on race unless the employer knows the applicant's race." *Robinson*, 847 F.2d at 1316.

■ Chandoke's resume did not indicate his race.[3] Moreover, neither Brinks nor any other ABI employee ever met Chandoke face to face. However, plaintiff argues that Brinks knew he was Indian after speaking to him on the telephone. Allegedly, plaintiff speaks with a "thick, distinctly Indian, accent." Chandoke dep. at 202; Complaint, ¶ 10. In addition, plaintiff allegedly told Brinks that all of his previous experience in the brewing industry before coming to America was in India. Chandoke dep. at 182.

Construing the facts in the light most favorable to the nonmovant, the court finds that ABI could have known that Chandoke was from India, his place of origin.[4] The question remains whether such evidence establishes knowledge of race. Defendant argues that it does not.

Relying on an unpublished case, *Korpai v. A.W. Zengeler's Grande Cleaners*, No. 85-C9130, 1987 WL 20428 (N.D.Ill. Nov. 24, 1987), defendant argues that evidence of an accent supports only claims of national origin, rather than racial, discrimination.[5]

In *Korpai*, the court emphasized that "a careful analysis of specific allegations of discrimination is necessary in this case to determine whether the discrimination [plaintiff] alleges is based upon *more than birthplace*

---

3. Chandoke has testified that his last name "could sound as a British name. It's not a typical Indian name." Chandoke dep. at 202–03.

4. In a sworn affidavit, Brink avers that "I had no knowledge or perception of ... Chandoke's race when I sent that May 11, 1989 letter" notifying him that he would not be considered for employment. Brink Aff., ¶ 4. It is up to the jury, not this court, to judge the credibility of this assertion.

5. Defendant also relies on an Equal Employment Opportunity Commission regulation. 29 C.F.R. § 1606.01 (1993) defines national origin discrimination, in part, as the denial of an equal employment opportunity because an individual has "linguistic characteristics of a national origin group."

This authority is unpersuasive. Nowhere do the regulations limit evidence of an accent to national origin discrimination. Moreover, the EEOC provides no definition of racial discrimination, which leaves unanswered the question of whether evidence of an accent can support a racial discrimination claim.

*alone." Id.* at *1 (emphasis added). In addition to "mock[ing plaintiff's] accent," plaintiff's fellow employees allegedly taunted her with statements including "Stupid foreigner, you come over here and take over the country," "stinky foreigner," "you dirty pig," and "go back where you came from." *Id.* Within that context, the court found that plaintiff's accent related only to national origin discrimination. *Id.*

However, in other contexts an accent would support a claim of discrimination based on race, as well as national origin.[6] As Justice Brennan noted in *St. Francis College,*

"the line between discrimination based on 'ancestry or ethnic characteristics' and discrimination based on 'place or nation of ... origin' is not a bright one. It is true that one's ancestry—the ethnic group from which an individual and his or her ancestors are descended—is not necessarily the same as one's national origin—the country 'where a person was *born,* or, more broadly, the country from which his or her ancestors *came.*' Often, however, the two are identical as a factual matter: one was born in the nation whose primary stock is one's own ethnic group."

481 U.S. at 614, 107 S.Ct. at 2028 (Brennan, J., concurring) (citations omitted).

ABI does not dispute plaintiff's claim that Indians are ethnically homogeneous. Accordingly, if Brinks assumed that Chandoke was from India, he might also have assumed that Chandoke was Indian.[7]

At trial, "if Chandoke can prove that he was subjected to intentional discrimination based on the fact that he was born an [Indian], rather than solely on the place or nation of his origin, ... he will have made out a case under § 1981." *St. Francis College,* at

613, 107 S.Ct. at 2028; *see also Von Zuckerstein,* 760 F.Supp. at 1314 ("[P]laintiff ... will have to prove at [trial] that the discrimination against him was based on his ethnicity and not on his nationality, and to the extent [he] fails to make such a showing, that deficiency can be addressed at the end of plaintiff's case.")

The court finds that material issues of fact exist as to (1) whether ABI knew that Chandoke was from India; and, (2) whether any discrimination, if it occurred, was based solely on his place of birth or on his ethnic background as well.

### III. *Conclusion*

The motion for partial summary judgment of defendant ABI is denied.

---

**6.** Suppose an employer telephoned a job applicant who happens to be Jamaican. The applicant speaks with a thick and distinctive Jamaican *patois.* He tells his prospective employer that most of his job experience before coming to America was in Jamaica. The employer knows that most Jamaicans are black, and consequently decides not to hire the applicant. In such a case, evidence of an accent would clearly support a racial discrimination claim.

**7.** Defendant favorably compares *E.E.O.C. v. North Hills Passavant Hospital,* 466 F.Supp. 783, 798 (W.D.Pa.1979) to the instant case. In *North*

*Hills,* as here, the applicant's only contact with the employer was by telephone and by mail. *Id.* at 793. The court found that the employer's "failure to hire [plaintiff] was not shown to have resulted from race discrimination, since they did not know his race." *Id.*

The instant case is distinguishable. Here, based on plaintiff's accent and biographical information, ABI could infer that Chandoke was of Indian extraction. In contrast, the *North Hills* employer had absolutely no indication of plaintiff's race.