**Brenda K. WOODMAN, Plaintiff–Appellant,**

v.

**WWOR–TV, INC., News America, Inc., and Fox Television Stations, Inc., Defendants–Appellees.**

**Docket No. 03–9348.**

United States Court of Appeals, Second Circuit.

Argued: July 14, 2004.

Decided: June 13, 2005.

---

Richard G. Menaker, Menaker & Herrmann LLP, New York, New York, for Plaintiff–Appellant.

Michael Starr (Adam J. Heft, on the brief), Hogan & Hartson L.L.P., New York, New York, for Defendants–Appellees.

Before: POOLER, SACK, and RAGGI, Circuit Judges.

RAGGI, Circuit Judge.

Plaintiff–Appellant Brenda K. Woodman appeals from an award of summary judgment entered on December 2, 2003, in the United States District Court for the Southern District of New York (Denise L. Cote, *Judge*) in favor of defendants-appellees WWOR–TV, Inc. ("WWOR"), News America, Inc., and Fox Television Stations, Inc. ("Fox"), on Woodman's claims of age discrimination in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621–634; New York State Human Rights Law, N.Y. Exec. Law § 296; and New York City Human Rights Law, N.Y. City Admin. Code § 8–107. *See Woodman v. WWOR–TV, Inc.*, 293 F.Supp.2d 381 (S.D.N.Y.2003). Plaintiff submits that the district court erred as a matter of law in ruling that, to establish a *prima facie* case of discriminatory treatment, plaintiff was required to adduce some evidence indicating that, at the time of her discharge, defendants knew that plaintiff was significantly older than another employee to whom her duties were transferred. Alternatively, she submits that the district court erred in concluding that she failed to present sufficient evidence to raise a triable issue of fact regarding defendants' awareness of her relative age. On *de novo* review, we reach substantially the same conclusions as to the law and the evidence as the district court, and, accordingly, we affirm its award of summary judgment.[1]

---

1. Because Woodman's age discrimination claims under state and city law are subject to the same analysis as her ADEA claim, *see* *Norville v. Staten Island Univ. Hosp.*, 196 F.3d 89, 95 (2d Cir.1999), we need not discuss them separately in this opinion.

## I. Background

This case arises in the context of a 2001 corporate merger whereby The News Corporation Ltd. ("News Corp."), the corporate parent of defendants News America and Fox, acquired Chris–Craft Industries, Inc. ("Chris–Craft"), then-owner of defendant WWOR. As a result of this merger, various work functions common to both the acquired and acquiring companies were consolidated, resulting in a number of long-term employees of the acquired company being terminated and their job responsibilities being transferred to employees of the acquiring company. Woodman, an employee of WWOR, was among the persons so terminated, and she submits that defendants' decision was impermissibly based on her age.

### A. Woodman's Employment with Chris–Craft

From 1985 until her termination in 2001, Woodman was employed in various advertising sales positions by television stations affiliated with Chris–Craft. In 1993, Woodman joined WWOR, a station serving the New York metropolitan area. In 1994, she was named the station's Local Sales Manager, and, in December 1999, she was promoted to General Sales Manager, the position she held when she was terminated, in July 2001, at the age of 61. Woodman asserts that, during her employment with Chris–Craft, she spoke openly about her age because she was proud to be one of the oldest sales managers in the television broadcasting industry.

### B. The News Corp./Chris–Craft Merger

On August 13, 2000, News Corp. entered into a merger agreement to acquire Chris–Craft, thereby adding Chris–Craft's ten television stations, including WWOR, to News Corp.'s holdings. The acquired stations were to be operated by News Corp.'s subsidiary, Fox. Before the merger, Fox was represented in a number of broadcast markets also served by Chris–Craft stations. For example, in New York, Fox operated WNYW, commonly known as "Fox 5." With the acquisition of Chris–Craft's stations, Fox would achieve a duopoly[2] in certain markets, including New York, from which it expected to realize both revenue gains and cost savings by consolidating various work functions of the formerly competing stations.

In the period preceding finalization of the merger, Fox reviewed information relating to the management of the Chris–Craft stations. To facilitate this process, Chris–Craft provided Fox with copies of its manager employment agreements, various labor agreements, personnel lists, and benefits information. Relying on these materials, Fox compiled a list of Chris–Craft employees to be terminated in anticipation of the formal merger. Woodman was one of these employees. Fox decided that the advertising sales departments of WWOR and WNYW would be consolidated and managed by its WNYW sales manager, Debbie von Ahrens, who was then 43 years old and had been a Fox employee for more than 12 years.[3]

---

**2.** Although the parties use "duopoly" to describe an effect of the News Corp./Chris–Craft merger, the term properly refers to "[a] market in which there are only two sellers of a product." *Black's Law Dictionary* at 540 (8th ed.2004). There are, of course, more than two firms that operate television stations in the New York market.

**3.** Although defendants' appellate brief states that von Ahrens was 42 at the time of the merger, *see* Appellees' Br. at 27, record evidence, specifically, the Station WWOR Employee Summary that defendants submitted in connection with their summary judgment motion, indicates that her age was then 43. This

### C. *Woodman's Termination*

Woodman learned of her termination on July 26, 2001, in a telephone conference call with Brian Kelly, then Chris–Craft's General Counsel. Kelly advised Woodman that her employment with WWOR would terminate effective July 30, 2001, the day before the formal close of the News Corp./Chris–Craft merger. In explaining the late notice, Kelly stated that News Corp. had only recently supplied him with a list of the Chris–Craft employees who were to be terminated before the formal merger.[4] Woodman's termination was also confirmed in writing by Herbert J. Siegel, Chairman of the Board of Chris–Craft, whose letter informed Woodman that she was eligible for a severance payment of $340,953.85, representing 70% of her previous year's salary. To receive this payment, Woodman signed a required release waiving "any" employment claims against BHC Communications, Inc., the Chris–Craft subsidiary that owned WWOR. The release specified that the waiver applied to claims under "any statute, including Title VII of the Civil Rights Act of 1964, the Civil Rights Act of 1990, the Americans with Disabilities Act of 1990, the Employee Retirement Income Security Act of 1974, the Family and Medical Leave Act of 1993, each as amended, and any other federal, state or local law or judicial decision." Release Agreement ¶ 2. The release did not, however, specifically reference the ADEA.

As this chronology indicates, Chris–Craft executed Woodman's termination, but it acted at News Corp.'s direction, specifically, at the direction of Fox executives. The individuals who participated in Woodman's termination decision were Fox's Senior Vice President and Chief Financial Officer, Elisabeth J. Swanson; Fox's President of Station Operations, Thomas R. Herwitz; its President of Sales, James Burke; its Senior Vice President for Human Resources, Jean C. Fuentes; its Executive Vice President for Engineering and Operations, Richard Slenker, Jr.; and its Vice President for Finance, Gary DeLorenzo (collectively, the "Fox executives"). It is undisputed that, at the time of the termination decision, none of these Fox executives had ever met, seen, or spoken with Woodman. From information supplied by Chris–Craft, however, it appears that the Fox executives did know that Woodman had worked at Chris–Craft for slightly more than 16 years.

### D. *Woodman's EEOC Claim of Employment Discrimination*

In a complaint dated January 8, 2002, and filed with the Equal Employment Opportunity Commission ("EEOC") on January 14, 2002, Woodman charged defendants with discriminatory termination based on age in violation of the ADEA. She asserted that her claim was not barred by the waiver provisions of her termination release because that document failed to comply with the requirements of the Older Workers Benefit Protection Act ("OWBPA"), 29 U.S.C. § 626(f).

Upon reviewing Woodman's complaint and subsequent submissions from the parties, the EEOC determined that Woodman's age discrimination claim was not supported by sufficient evidence to warrant further investigation. It explained:

---

minor inconsistency does not affect our analysis.

4. Fox submits that there were tax advantages in having Chris–Craft incur a non-revocable obligation to make severance payments to its discharged employees before formal completion of the merger.

Examination of the evidence indicates that Charging Party's [Woodman's] position was consolidated with another position. The retained employee, although younger, had greater experience and knowledge with Fox Television's procedures and practices and had been performing successfully. A review of workforce before and after the merger and reorganization revealed a total difference of .7% age differential. Respondents[ ] further identified other affected positions where the older employees were retained over the younger employees. Therefore, there was no evidence to support that if not for the Charging Party's age she would not have been selected for termination. Given these facts, it is· unlikely that EEOC would find that Respondent terminated Charging ing .Party in violation of the ADEA if it invested additional resources.

EEOC Determination, Aug. 22, 2002.[5] Accordingly, it issued Woodman a right-to-sue notice on this claim.

At the same time, however, the EEOC agreed with Woodman that the releases signed by her and· certain other terminated Chris–Craft employees violated the OWB-PA and related EEOC regulations in that the releases (1) failed to refer to employee rights and claims arising under the ADEA, 29 U.S.C. § 626(f)(1)(B); (2) failed to afford terminated employees forty-five days within which to consider signing the waiv-

er document, see id. § 626(f)(1)(F)(ii); (3) failed to identify by job title and age all terminated employees as well as all persons in the same job classification or operational unit who were being retained, see id. § 626(f)(1)(H)(ii); (4) failed to provide a seven-day revocation period after signing a release, see id. § 626(f)(1)(G); and (5) precluded terminated employees from asserting rights or claims that might arise after execution of the releases, see id. § 626(f)(1)(C). To address these violations, the EEOC commenced a conciliation process to ensure defendants' future compliance with OWBPA and EEOC regulations in its release agreements.

### E. District Court Proceedings

On November 20, 2002, Woodman commenced this action in the United States District Court for the Southern District of New York, where her case was initially assigned to Judge John S. Martin, Jr. In a telephone conference sometime in mid–2003, defendants submitted that, as a matter of law, they could not be liable for intentional discrimination because they had no knowledge of Woodman's age at the time she was terminated. They requested, and the court agreed, to limit discovery to the issue of such knowledge in anticipation of a motion for summary judgment.[6]

Defendants filed for summary judgment on June 13, 2003. Sometime thereafter, Woodman's case was reassigned to Judge

**5.** The 0.7% age differential noted by the EEOC relies on statistical evidence submitted by Fox identifying all employment actions at WWOR between the merger and July 2002. That summary indicates that the average age of WWOR employees before the merger was 40.6 years, whereas the average age in July 2002 was 39.9 years. See Station WWOR Employee Summary, July 31, 2002, Table 1. The same summary indicates that the average age of terminated WWOR workers whose. responsibilities were transferred to Fox counterparts was 43.7 years, whereas the average age

of the Fox employees assuming the WWOR responsibilities was 45.4. See id. Table 3.

**6.** After defendants moved for summary judgment, Woodman was afforded the opportunity to depose each of the Fox executives involved in her termination decision and, in fact, deposed two of them: Swanson and Fuentes. In addition, she deposed James Clayton, General Manager of WNYW and WWOR and Vice President of Fox Television, and Lynn Franzoi, Senior Vice President of Fox Television.

Cote, who, in a detailed memorandum and order dated November 24, 2003, granted defendants' motion. The court concluded that Woodman's failure to adduce admissible evidence indicating defendants' knowledge that she was significantly older than the person to whom her duties were transferred precluded her establishment of a *prima facie* case of age discrimination. *See Woodman v. WWOR–TV, Inc.*, 293 F.Supp.2d at 388. The court rejected Woodman's argument that the "joint employer" doctrine could be used to impute Chris–Craft's knowledge of her age to the Fox executives who made the termination decision. *See id.* at 390–91. Further, the court concluded that, even if Woodman had carried her burden at the *prima facie* stage, defendants were still entitled to summary judgment because they had produced a non-discriminatory reason for Woodman's termination, *see id.* at 388 ("News Corporation sought to create a single integrated sales force in New York, eliminating redundant positions to achieve greater efficiency. Defendants chose to keep von Ahrens, a long-term Fox employee and General Sales Manager for Fox's New York station, as the head of sales for the New York duopoly based on their satisfaction with von Ahrens' past sales performance, as well as her familiarity with Fox policies and procedures."), and Woodman could not carry her ultimate burden to prove intentional age discrimination without proof that defendants knew her age relative to that of her alleged replacement, *see id.* at 389. The court ruled that the same evidentiary defect prevented Woodman from prevailing on a mixed-motive claim of discrimination. *See id.* To the extent Woodman asserted that she could pursue a disparate impact claim without proving that defendants knew her relative age, the district court ruled that an impact claim was barred because Woodman had not presented it to the EEOC. *See id.* at 389–90.

## II. *Discussion*

### A. *Standard of Review*

We review the district court's award of summary judgment *de novo, see Jetter v. Knothe Corp.*, 324 F.3d 73, 75 (2d Cir.2003) (*per curiam* ), resolving all factual ambiguities and crediting all inferences in favor of Woodman, *see Slattery v. Swiss Reinsurance Am. Corp.*, 248 F.3d 87, 91 (2d Cir. 2001). We will affirm the award "only 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact' " and that defendants are " 'entitled to a judgment as a matter of law.' " *Roge v. NYP Holdings, Inc.*, 257 F.3d 164, 167 (2d Cir.2001) (quoting Fed.R.Civ.P. 56(c)). In determining whether a genuine issue of material fact exists for trial, we are obliged "carefully [to] distinguish between evidence that allows for a reasonable inference of discrimination and evidence that gives rise to mere speculation and conjecture." *Bickerstaff v. Vassar Coll.*, 196 F.3d 435, 448 (2d Cir.1999); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A non-moving party cannot avoid summary judgment simply by asserting a "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Instead, she must "set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e); *see Golden Pac. Bancorp v. FDIC,* 375 F.3d 196, 200 (2d Cir.2004) (" '[T]he non-moving party may not rely on mere conclusory allegations nor speculation, but instead must offer some hard evidence showing that its version of the events is not wholly fanciful.' " (quoting *D'Amico v. City of New York,* 132 F.3d 145, 149 (2d Cir.1998))).

## B. Woodman's Age Discrimination Claim

The ADEA makes it "unlawful for an employer ... to discharge any individual or otherwise discriminate against any individual ... because of such individual's age." 29 U.S.C. § 623(a)(1). The class protected by this statutory prohibition is limited to persons 40 years of age or older. *See id.* § 631. Woodman, who was 61 years old at the time of her discharge and, therefore, within the ADEA protected class, asserts that defendants discriminated against her on the basis of her age when they terminated her employment and transferred her responsibilities to a substantially younger counterpart at WNYW.

### 1. The McDonnell Douglas Burden–Shifting Analysis

Because Woodman presents no direct evidence of discriminatory treatment based on age, we review her ADEA claim under the three-step, burden-shifting framework established by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), for race discrimination claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e–2000e–17. *See Roge v. NYP Holdings, Inc.*, 257 F.3d at 168 (applying *McDonnell Douglas* analysis to ADEA claim). Under this framework, a plaintiff bears the initial burden to establish a *prima facie* case of age discrimination by showing that "(i) at the relevant time the plaintiff was a member of the protected class; (ii) the plaintiff was qualified for the job; (iii) the plaintiff suffered an adverse employment action; and (iv) the adverse employment action occurred under circumstances giving rise to an inference of discrimination, such as the fact that the plaintiff was replaced by someone 'substantially younger.'" *Id.* (quoting *O'Connor v. Consol. Coin Cater-*

ers Corp., 517 U.S. 308, 313, 116 S.Ct. 1307, 134 L.Ed.2d 433 (1996)). We have characterized plaintiff's *prima facie* burden as "minimal" and "*de minimis.*" *Zimmermann v. Assocs. First Capital Corp.*, 251 F.3d 376, 381 (2d Cir.2001).

A plaintiff's establishment of a *prima facie* case gives rise to a presumption of unlawful discrimination, *see Roge v. NYP Holdings, Inc.*, 257 F.3d at 168, that shifts the burden of production to the defendant, who must proffer a "legitimate, nondiscriminatory reason" for the challenged employment action, *Slattery v. Swiss Reinsurance Am. Corp.*, 248 F.3d at 91. If the defendant articulates such a reason, "the presumption of discrimination drops out," *Roge v. NYP Holdings, Inc.*, 257 F.3d at 168, and the plaintiff must "prove 'that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination,'" *id.* (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000)). In short, the ultimate burden rests with the plaintiff to offer evidence "sufficient to support a reasonable inference that prohibited [age] discrimination occurred." *James v. N.Y. Racing Ass'n*, 233 F.3d 149, 156 (2d Cir. 2000); *see also Schnabel v. Abramson*, 232 F.3d 83, 90 (2d Cir.2000) (holding that court must "examin[e] the entire record to determine whether the plaintiff could satisfy his 'ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff'" (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. at 143, 120 S.Ct. 2097)).

### 2. Woodman's Prima Facie Case

The record demonstrates, and the parties agree, that Woodman has satisfied the first three elements of a *prima facie* case of age discrimination. As noted, her age clearly brought her within the ADEA protected class. Similarly, her work record

demonstrates that she was qualified to serve as General Sales Manager of WWOR; indeed, when WWOR announced Woodman's promotion in December 1999, it recognized the "wealth of experience" she brought to this position. Finally, Woodman's discharge certainly constitutes an "adverse employment action." *Williams v. R.H. Donnelley, Corp.*, 368 F.3d 123, 128 (2d Cir.2004) (citing *Galabya v. New York City Bd. of Educ.*, 202 F.3d 636, 640 (2d Cir.2000)).

The only point in dispute on this appeal is the fourth element of a *prima facie* case. Woodman asserts that the district court erred in ruling that the transfer of her sales responsibilities at WWOR to a younger WNYW counterpart could not support an inference of discrimination without some evidence that defendants acted with knowledge of Woodman's age relative to that of her replacement.[7] In any event, she submits that the district court failed to recognize that she had produced circumstantial evidence of defendants' knowledge of her relative age or, alternatively, that Chris–Craft's knowledge of her age could be imputed to defendants. We find none of these arguments convincing.

  a. *For Replacement by a Younger Worker to Support the Inference of Discrimination Necessary to Establish a Prima Facie Case, There Must Be Some Evidence Showing a Defendant Acted with Knowledge as to the Plaintiff's Age Relative to That of Her Replacement*

■ Woodman concedes that employer knowledge is relevant to determining dis-

criminatory intent, but she assumes that knowledge pertains to her protected status: "[i]f an employer does not know its employee is in a protected group, it cannot be guilty of discriminatory intent in taking adverse employment action against that employee." Appellant's Br. at 17. She insists, moreover, that no evidence of such knowledge is necessary at the *prima facie* stage because discriminatory intent can be inferred simply from the fact that the employer replaced the discharged plaintiff with a significantly younger person. In support, she cites *O'Connor v. Consolidated Coin Caterers Corp.*, in which the Supreme Court observed: "the fact that a replacement is substantially younger than the plaintiff is a far more reliable indicator of age discrimination than is the fact that the plaintiff was replaced by someone outside the protected class." 517 U.S. at 313, 116 S.Ct. 1307. Woodman's argument is flawed in several respects.

  (1) *When a Plaintiff Cites a Significant Age Discrepancy Between Herself and a Replacement as Evidence of Discriminatory Intent, It Is Defendant's Knowledge as to that Discrepancy, Not Plaintiff's Protected Status, that Is Relevant*

■ Woodman's assumption that the "knowledge"[8] relevant to discerning defendants' discriminatory intent—whether at the *prima facie* or final stage of *McDonnell Douglas* analysis—pertains only to her status in the ADEA protected

---

**7.** For convenience, we use "replacement" to refer to the employee to whom Woodman's responsibilities were transferred following the merger, recognizing that defendants dispute the strict appropriateness of the term. *See* Appellees' Br. at 37 ("[T]he word 'replace' is just a characterization—in truth, a mischaracterization—of the facts, and not a fact itself.").

We need not resolve this issue to address the points raised on appeal.

**8.** As we discuss *infra* at [28–29 & n. 14], the law does not equate "knowledge" with certitude, nor does it demand direct proof of knowledge. A jury may reasonably infer a defendant's knowledge from the totality of

class is incorrect. *O'Connor* itself states that the protected status of an employee is an "irrelevant factor" in determining whether replacement by another employee indicates an age discriminatory intent. *Id.* at 312, 116 S.Ct. 1307. The "far more reliable indicator of age discrimination" is the age discrepancy between the discharged employee and her replacement. *Id.* at 312–13, 116 S.Ct. 1307. Thus, it is that discrepancy as to which an employer must have some knowledge to support an inference of discriminatory intent.[9] *See generally Brennan v. Metro. Opera Ass'n,* 192 F.3d 310, 317 (2d Cir.1999) (recognizing in *dicta* that *O'Connor* supports argument that ADEA defendant "did not need to know [plaintiff's] exact age, but only that she was substantially older than [her replacement]").

This conclusion is dictated by the ADEA itself which differs from other employment discrimination statutes in providing no neat fit between membership in the protected class (the focus of the first *prima facie* factor) and the proscribed discrimination (the focus of the fourth factor). Under Title VII, for example, a person's race or gender will place the individual in a protected class (the first factor), *and* any differential treatment based on that race or gender will support an inference of

discriminatory intent (the fourth factor). Where the first and fourth factors thus connect, courts may properly describe the knowledge necessary to support a discriminatory inference simply in terms of the plaintiff's "protected status." *See infra* at II.B.2.a.(3). But as *O'Connor* recognizes, no such link exists under the ADEA, because that statute "does not ban discrimination against employees because they are aged 40 or older; it bans discrimination against employees because of their age, but limits the protected class to those who are 40 or older." *O'Connor v. Consol. Coin Caterers Corp.,* 517 U.S. at 312, 116 S.Ct. 1307. Thus, a 40–year old is unquestionably a member of the ADEA protected class, but if that person is discharged and replaced by a 39–year old, the 1–year age discrepancy, without more, will not likely support an inference of discriminatory intent. *See generally id.* at 312, 116 S.Ct. 1307; *Hoffmann v. PRIMEDIA Special Interest Publs.,* 217 F.3d 522, 525 (7th Cir.2000) (holding 3–year age difference between discharged 42–year–old employee and 39–year–old replacement "fails the fourth requirement of a *McDonnell Douglas* showing under the ADEA"). On the other hand, an employer's decision to replace an older worker with a significantly

---

circumstantial evidence, and conscious avoidance of a highly probable fact can, in some cases, satisfy the knowledge requirement.

9. In *O'Connor,* the Supreme Court stated:

In the age discrimination context, such an inference [of discriminatory intent] cannot be drawn from the replacement of one worker with another worker insignificantly younger. Because the ADEA prohibits discrimination on the basis of age and not class membership, the fact that a replacement is substantially younger than the plaintiff is a far more reliable indicator than is the fact that the plaintiff was replaced by someone outside the protected class.

517 U.S. at 313. In this case, defendants do not dispute that the 43–year–old von Ahrens was not "insignificantly younger" than the 61–year–old Woodman. *See generally Byrnie v. Town of Cromwell Bd. of Educ.,* 243 F.3d 93, 102 (2d Cir.2001) (holding 22–year age discrepancy between plaintiff and rival job applicant supports inference of age discrimination). Thus, we need not draw any bright line in this case as to the degree of age discrepancy that can or cannot support an inference of discriminatory intent. We consider only the question whether some evidence of knowledge as to a concededly significant discrepancy is necessary to support an inference of discriminatory intent at the *prima facie* stage.

younger one can support an inference of intentional age discrimination even when both persons are ADEA class members. *See O'Connor v. Consol. Coin Caterers Corp.*, 517 U.S. at 312–13, 116 S.Ct. 1307; *Byrnie v. Town of Cromwell Bd. of Educ.*, 243 F.3d 93, 101 (2d Cir.2001).[10] Accordingly, as the Sixth Circuit observed in *Grosjean v. First Energy Corp.*, *McDonnell Douglas*'s fourth *prima facie* factor, as applied to ADEA cases, is properly "modified to require replacement not by a person outside the protected class, but merely replacement by a significantly younger person." 349 F.3d 332, 335 (6th Cir.2003) (citing *O'Connor*). It logically follows that if a defendant's knowledge is relevant to an inference of age discriminatory intent at the *prima facie* stage—and, for reasons stated herein, we conclude that it is—that knowledge must pertain to the significant age discrepancy that gives rise to an inference of discriminatory intent, not to a factor irrelevant to that determination, i.e., plaintiff's protected status.

### (2) O'Connor Does Not Address the Issue of a Defendant's Knowledge as to an Employee's Relative Age

■ Woodman's argument that *O'Connor* permits discriminatory intent to be inferred at the *prima facie* stage simply from the fact of a significant age discrepancy between a discharged employee and a replacement, with no evidence of employer knowledge, is not new to this court. It was earlier raised in *Brennan v. Metropolitan Opera Ass'n.* Brennan, who also claimed discriminatory replacement by a significantly younger person, appealed an award of summary judgment based, in part, on a ruling that, absent evidence showing defendant knew her age when it

did not rehire her, there was no basis for drawing the inference of intentional discrimination necessary to a *prima facie* case. *See Brennan v. Metro. Opera Ass'n*, No. 95 Civ. 2926, 1998 WL 193204, at *9–*10 (S.D.N.Y. Apr.22, 1998). In affirming summary judgment, we noted that, in light of *O'Connor*, an ADEA plaintiff might be able to carry her *prima facie* burden simply by showing her replacement by a significantly younger person. *See Brennan v. Metro. Opera Ass'n*, 192 F.3d at 317. But, we specifically declined to decide whether such an inference of discrimination could reasonably be drawn without any evidence that the defendant was aware of a significant age discrepancy. *See id.* Instead, we concluded that summary judgment was properly awarded in favor of defendant because, even if plaintiff had met her burden at the *prima facie* stage, she had not adduced sufficient evidence to meet her ultimate burden at the third stage of the *McDonnell Douglas* analysis. *See id.* at 317–18, 116 S.Ct. 1307.

In this case, the district court similarly ruled that Woodman's case was deficient at both the *prima facie* and final stages of the *McDonnell Douglas* framework. *See Woodman v. WWOR–TV, Inc.*, 293 F.Supp.2d at 389–90. Yet, because discovery was limited to the single issue of defendants' knowledge of Woodman's age (affording plaintiff no discovery on defendants' proffered nondiscriminatory reason for her discharge), we are disinclined to review this case in terms of whether plaintiff has carried her ultimate burden of proof. Rather, we focus on the issue left unresolved in *Brennan*: whether at the *prima facie* stage, a plaintiff who relies on replacement by a younger worker to sup-

---

**10.** A significant age discrepancy between a discharged worker under 40 and her younger replacement could also support an inference of age discriminatory intent for purposes of the fourth *prima facie* factor, but no ADEA claim could be maintained because the discharged worker could not satisfy the class status required by the first factor.

port an inference of discrimination must be able to point to some admissible evidence that the defendant acted with knowledge as to the alleged significant age discrepancy. For the reasons explained herein, we conclude that some evidence of such knowledge is required to support the inference necessary to establish a *prima facie* case.

In reaching this conclusion, we begin by rejecting Woodman's argument that *O'Connor v. Consolidated Coin Caterers Corp.* is to the contrary. *O'Connor* does not hold that a defendant's knowledge as to a plaintiff's relative age is irrelevant at the *prima facie* stage. Nor does it hold that such knowledge can be inferred simply from the fact that plaintiff was replaced by a significantly younger employee. To the contrary, *O'Connor* does not discuss the issue of employer knowledge at all, likely because defendant's awareness of plaintiff's age and that of her replacement was undisputed in that case. This is not surprising. As the district court here observed, in the majority of age discrimination cases, a defendant employer's knowledge of a plaintiff's age will be undisputed because employers routinely maintain employee age information in their personnel files or are generally aware of employees' relative ages from personal on-the-job contact. *See Woodman v. WWOR–TV, Inc.*, 293 F.Supp.2d at 386.[11] Such circumstances easily support an inference of employer knowledge, certainly at the *prima facie* stage, where plaintiff's burden is minimal. Woodman's case, however, is atypical because the decision to terminate her was not made by her long-time employer but by officials of an acquiring company who had apparently never met her or re-

viewed her personnel file. Thus, the usual circumstances indicating an ADEA defendant's awareness of a plaintiff's age relative to that of her replacement are not present.

With no reason to consider the question of employer knowledge, *O'Connor* focused on an entirely different issue that arises even when a defendant's awareness of a plaintiff's relative age is undisputed: whether a defendant's discriminatory intent can be inferred only from replacement of a plaintiff by a younger worker when the younger worker is outside the ADEA protected class, that is, under forty years of age, or whether discriminatory intent can also be inferred when the younger worker is also protected by the ADEA. In ruling that the latter circumstance could support a *prima facie* case, *see O'Connor v. Consol. Coin Caterers Corp.*, 517 U.S. at 312, 116 S.Ct. 1307, the Court reiterated certain basic principles of discrimination law that support the conclusion we reach today as to the need for some evidence indicating defendant's awareness of the charged age discrepancy.

For example, *O'Connor* states that a *prima facie* case requires " '*evidence adequate to create an inference that an employment decision was based on a[n illegal] discriminatory criterion ....*' " *Id.* (quoting *Teamsters v. United States*, 431 U.S. 324, 358, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977)) (alteration and emphasis in original). A replacement decision cannot be "based on" the discriminatory criterion of age unless an employer knows that it has replaced an older employee with a significantly younger worker. *O'Connor* further states that "there must be ... a

---

11. The same conclusion generally applies to employer knowledge of workers' race and gender, but not necessarily to disabilities or religion. In any event, as the discussion *infra* at II.B.2.a.(3) demonstrates, when an issue arises with respect to an employer's knowledge as to any protected status, courts require the plaintiff to adduce some evidence of knowledge to support an inference of intentional discrimination at the *prima facie* stage.

logical connection between each element of the prima facie case and the illegal discrimination for which it establishes a 'legally mandatory, rebuttable presumption.'" *Id.* at 311–12, 116 S.Ct. 1307 (quoting *Texas Dep't of Cmty. Affairs v. Burdine,* 450 U.S. 248, 254 n. 7, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981)). This logical connection can be drawn only if the employer acted with knowledge that the replaced worker was significantly older than her successor.

    (3) *A Defendant's Knowledge as to an Employee's Relative Age Is Necessary to Support an Inference of Age Discrimination at the Prima Facie Stage*

In concluding that a significant age discrepancy can support a *prima facie* inference of discriminatory intent only if some evidence indicates defendant's knowledge as to the discrepancy, we do not rely only on the general principles reiterated in *O'Connor.* Our conclusion is also informed by the "presumption" that arises from establishment of a *prima facie* case. In *St. Mary's Honor Center v. Hicks,* the Supreme Court explained that "[t]o establish a 'presumption' is to say that a finding of the predicate fact (here, the prima facie case) produces 'a *required conclusion* in the absence of explanation' (here, the finding of unlawful discrimination)." 509 U.S. 502, 506, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993) (quoting 1 D. Louisell & C. Mueller, *Federal Evidence* § 67 at 536 (1977)) (emphasis added); *see also Texas Dep't of Cmty. Affairs v. Burdine,* 450 U.S. at 254, 101 S.Ct. 1089 (explaining that "the prima facie case 'raises an inference of discrimination only because we presume these acts, if otherwise unexplained, are more likely than not based on the consideration of impermissible factors'" (quoting *Furnco Constr. Corp. v. Waters,* 438 U.S. 567, 577, 98 S.Ct. 2943, 57 L.Ed.2d 957 (1978))).

Without some evidence that an employer knew that it was replacing an older worker with a younger one, intentional discrimination cannot be the "required conclusion." As the Third Circuit sensibly observed in *Geraci v. Moody–Tottrup, Int'l, Inc.,* 82 F.3d 578, 581 (3d Cir.1996), "it is counterintuitive to infer that the employer discriminated on the basis of a condition of which it was wholly ignorant."

The Supreme Court's recent decision in *Raytheon Co. v. Hernandez,* 540 U.S. 44, 124 S.Ct. 513, 157 L.Ed.2d 357 (2003), a case arising under the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12111—12117, supports this conclusion. *Raytheon* states that, if an employer "were truly unaware that such a disability existed, it would be impossible for her hiring decision to have been based, even in part, on respondent's disability. And, if no part of the hiring decision turned on respondent's status as disabled, he cannot, *ipso facto,* have been subject to disparate treatment." *Id.* at 55 n. 7, 124 S.Ct. 513.

Even before *Raytheon,* two of our sister circuits had ruled that a plaintiff suing under the ADA was required to adduce some evidence of a defendant's knowledge of the alleged disabling condition to establish a *prima facie* case of discrimination. *See Monette v. Elec. Data Sys. Corp.,* 90 F.3d 1173, 1185 (6th Cir.1996); *Morisky v. Broward County,* 80 F.3d 445, 448 (11th Cir.1996) (*per curiam* ).

Courts have similarly required a *prima facie* showing that a defendant knew of a plaintiff's protected status in connection with other discrimination claims. For example, in *Geraci v. Moody–Tottrup, Int'l, Inc.,* 82 F.3d at 581, the Third Circuit ruled that a plaintiff suing under Title VII for employment discrimination based on pregnancy had to demonstrate her employer's knowledge of her condition to es-

tablish a *prima facie* case. *Geraci* acknowledged that the "obviousness" of an employee's pregnancy necessarily "varies, both temporally and as between different affected individuals." *Id.* Thus, where a plaintiff was visibly pregnant at the time of the adverse employment action or where she alleges her own disclosure of pregnancy to the employer before the adverse action, such evidence suffices to raise an issue of employer knowledge and to preclude an award of summary judgment. But, "[i]f the pregnancy is not apparent and the employee has not disclosed it to her employer," *Geraci* holds that an employee must, "as part of her *prima facie* case," point to some admissible "evidence from which a rational jury could infer that the employer knew that she was pregnant." *Id.* The Sixth and Seventh Circuits have reached similar conclusions in pregnancy discrimination cases. *See Prebilich–Holland v. Gaylord Entm't Co.,* 297 F.3d 438, 443–44 (6th Cir.2002); *Clay v. Holy Cross Hosp.,* 253 F.3d 1000, 1007 & n. 7 (7th Cir.2001).

In *Lubetsky v. Applied Card Sys., Inc.,* 296 F.3d 1301 (11th Cir.2002), the Eleventh Circuit ruled that evidence of employer knowledge of a plaintiff's protected status was necessary to establish a *prima facie* case of religious discrimination under Title VII. The court observed that a "disparate treatment employment discrimination" claim is properly reviewed in light of "the actual knowledge and actions of the decision-maker." *Id.* at 1306. Because plaintiff failed to "present any evidence that the decision-maker knew of his religion," the court ruled that he necessarily

"failed to establish a prima facie case of intentional religious discrimination." *Id.*

Finally, the Ninth Circuit addressed the issue of employer knowledge in a Title VII case in which an African–American job applicant, who apparently was rejected without an interview, charged race discrimination. *See Robinson v. Adams,* 847 F.2d 1315 (9th Cir.1987). Robinson argued that *McDonnell Douglas,* by its terms, does not require proof of an employer's knowledge of a plaintiff's protected status at the *prima facie* stage. The Ninth Circuit disagreed.

> The *McDonnell Douglas* test. . . "was never intended to be rigid, mechanized, or ritualistic. Rather, it is merely a sensible, orderly way to evaluate the evidence . . . on the critical question of discrimination." The *McDonnell Douglas* test defines one method of proving a prima facie case of discrimination—proof from which a trier of fact can reasonably infer intentional discrimination. But the *McDonnell Douglas* elements would not rationally create this inference if, as here, a plaintiff offers proof that he is Black, but there is no showing by direct or indirect evidence that the decision-maker knew this fact.

*Id.* at 1316 (quoting *Furnco Constr. Corp. v. Waters,* 438 U.S. at 577 (other internal citations omitted)).[12]

We agree with this analysis and, accordingly, join our sister circuits in concluding that a defendant's discriminatory intent cannot be inferred, even at the *prima facie* stage, from circumstances unknown to the defendant. Thus, in an ADEA case, where

---

**12.** Although the *Robinson* panel split as to whether the plaintiff adduced sufficient evidence of the defendant's knowledge of his race to establish a *prima facie* case, the dissenting member of the panel, no less than the majority, agreed that such evidence was necessary at the *prima facie* stage. *See Robinson*

*v. Adams,* 847 F.2d at 1319 (Pregerson, J., dissenting) ("I agree with the majority that, notwithstanding the literal language of *McDonnell Douglas,* a finding of intentional discrimination logically requires a showing that defendants knew plaintiff's race.").

a plaintiff relies on a substantial age discrepancy between herself and her replacement, she must adduce some evidence indicating defendants' knowledge as to that discrepancy to support the inference of discriminatory intent required by the fourth *prima facie* factor. In cases where such knowledge is undisputed, which we expect to be most ADEA cases, a court need not specifically address this point; rather it may be assumed in considering whether the circumstances presented indicate intentional discrimination. But, where a defendant asserts that the record fails to indicate the requisite awareness, a plaintiff must adduce some evidence, whether direct or indirect, indicating a defendant's knowledge as to the relative ages of the persons compared.[13]

b. *Woodman Failed to Adduce Evidence Showing that Defendants Knew that She Was the Substantially Older Employee*

Defendants do not dispute their responsibility for Woodman's termination. To the contrary, they identify the Fox executives who participated in the termination decision. In support of summary judgment, however, each of the identified Fox executives has attested that he or she did not know Woodman's age and, indeed, had never seen, met, or spoken with Woodman prior to her termination. Thus, they submit, no inference of discriminatory intent can be drawn from Woodman's replacement by a younger employee. Woodman disagrees and submits that the district court erred in failing to recognize that she

did adduce evidence indicating defendants' knowledge as to her age relative to that of her younger replacement.

(1) *Woodman's Minimal Burden to Establish Knowledge at the Prima Facie Stage*

In reviewing Woodman's challenge, we are mindful that, at the *prima facie* stage, an ADEA plaintiff's evidentiary burden to establish a defendant employer's knowledge as to her age relative to that of a replacement is minimal. Indeed, as already noted, the burden is so easily carried in most employment situations that the issue rarely arises. Further contributing to this reality is the fact that a defendant's knowledge as to an ADEA plaintiff's relative age need not be demonstrated, at any stage of the proceedings, by direct proof. "Knowledge" is a fact often established—even in criminal cases where the prosecution's burden is beyond a reasonable doubt—simply through circumstantial evidence. *See, e.g., United States v. Gaskin,* 364 F.3d 438, 461 (2d Cir.2004) (observing that the element of knowledge "often can be proved only by circumstantial evidence"); *Gordon v. New York City Bd. of Educ.,* 232 F.3d 111, 117 (2d Cir.2000) (noting that jury could find party's knowledge of protected activity from circumstantial evidence); *Torrington Extend–A–Care Employee Ass'n v. NLRB,* 17 F.3d 580, 596 (2d Cir.1994) (holding that Board could rely on circumstantial evidence to establish one person's knowledge of another's union activities). Moreover, in drawing inferences of knowledge from circumstantial ev-

---

13. We note our receipt of the parties' letters pursuant to Fed. R.App. P. 28(j) but consider the cases cited therein, *see Machinchick v. PB Power, Inc.,* 398 F.3d 345 (5th Cir.2005); *Olson v. Northern FS, Inc.,* 387 F.3d 632 (7th Cir.2004), irrelevant to our analysis, as those cases do not address the question which here concerns us: whether, to establish a *prima*

*facie* case of age discrimination, a plaintiff must adduce some evidence indicating that the defendant knew the plaintiff's age relative to that of her replacement. Indeed, there is no indication in either *Machinchick* or *Olson* that the defendants ever disclaimed knowledge of the terminated employees' relative ages, as defendants have done in this case.

idence, a fact finder is not required to operate in an experiential vacuum. To the contrary, he may draw on the full range of his reason, experience, and common sense. *See* L. Sand, 4 *Modern Federal Jury Instructions,* Instruction 74–2 (rev.Oct. 1999).[14]

Applying these principles to Woodman's case, and viewing the record in the light most favorable to her, we are nevertheless obliged to conclude, as did the district court, that the evidence she adduced was insufficient, even at the *prima facie* stage, to establish the requisite knowledge by defendants that Woodman was significantly older than her replacement.

### (2) *The Insufficiency of Woodman's Evidence*

Woodman submits that she established defendants' knowledge as to her relative age through the following evidence: (1) Fox's review of Chris–Craft records before the merger, (2) her general reputation in the broadcasting industry as one of the oldest advertising sales executives, and (3) the omission of pertinent ADEA information from her release form.

### (a) *The Chris–Craft Records*

Woodman fails to identify any Chris–Craft records disclosed to Fox prior to her termination that revealed her date of birth, her age, or her relative age. To the extent Chris–Craft supplied Fox with personnel lists identifying each employee at Chris–Craft's television stations, these lists stated the employee's job title; his or her department; and information necessary to calculate possible severance benefits, specifically, the employee's current salary, last three years' bonuses, and date of hire. But nothing in the record indicates that these lists included the age or birth date of any Chris–Craft employee.

■ Woodman does not contend otherwise. Instead, she submits that the personnel lists, by crediting her with 16.09 years of service at Chris–Craft, "put Fox Group on notice that she was likely to be in the protected class." Appellant's Reply

---

**14.** We note that a party's knowledge of a disputed fact may also be proved though evidence that he consciously avoided knowledge of what would otherwise have been obvious him. As we have explained in the criminal context, "[t]he rationale for the conscious avoidance doctrine is that 'a defendant's affirmative efforts to 'see no evil' and 'hear no evil' do not somehow magically invest him with the ability to 'do no evil.'" *United States v. Adeniji,* 31 F.3d 58, 62 (2d Cir.1994) (quoting *United States v. DiTommaso,* 817 F.2d 201, 218 n. 26 (2d Cir.1987)); *see also United States v. Reyes,* 302 F.3d 48, 54 (2d Cir.2002).

This principle translates easily to discrimination cases. Although the law encourages a natural blindness toward certain characteristics—e.g., race, gender, ethnicity, disability, age—that society has decided should not result in employment discrimination, it does not tolerate a person shutting his eyes to a fact—such as the relative age of an employee—*after* realizing its high probability in order to deny that he acted with the requisite knowledge

and intent to discriminate. *See generally* L. Sand, 1 *Modern Federal Jury Instructions,* Instruction 3A–2 (rev.Nov.2002) (providing for jury to be instructed that, if it finds "defendant was aware of a high probability that [a certain fact was true or not true] and that the defendant acted with deliberate disregard of the facts, [the jury] may find that the defendant acted knowingly"). Thus, an employee could make out a *prima facie* case by alleging that the employer thought it highly probable—based on facts that it knew—that the employee was significantly older than the person who replaced her, but deliberately did not learn the employee's relative age. Although Woodman has not argued, as a basis for establishing the requisite knowledge in this case, that defendants were aware of a high probability that Woodman was substantially older than von Aherns but deliberately avoided actual knowledge of the women's relative ages, we have applied the conscious avoidance principle to our review of the record, discussed *infra* at [ ].

Br. at 14. We disagree. "[A]n employee's age is analytically distinct from his years of service." *Hazen Paper Co. v. Biggins*, 507 U.S. 604, 611, 113 S.Ct. 1701, 123 L.Ed.2d 338 (1993). Thus, seniority is not a sufficiently accurate indicator of age to allow, as a matter of course, a defendant's knowledge of the former to substitute for knowledge of the latter. For example, in *Ludovicy v. Dunkirk Radiator Corp.*, 922 F.2d 109, 111 (2d Cir.1990), a 53–year–old employee and a 34–year–old employee of the defendant company both had 14 years of service. So in this case, because Woodman could have attained 16 years of service and still been less than 40 years of age, her seniority is not probative of defendants' knowledge as to her age at the time of her discharge. More importantly, although von Ahrens, at age 43, was almost 20 years younger than Woodman, the two women's years of service—12 for von Ahrens and 16 for Woodman—were sufficiently close that the women could easily have been the same age.[15] Their respective seniority levels, therefore, cannot give rise to an inference that defendants knew Woodman was the significantly older worker.

Woodman submits that Chris–Craft's disclosure of employee benefits information would likely have revealed her age to the defendants. In fact, the record indicates that this information, accompanied by various actuarial reports, contained only generic age information, for example, identifying the number of male and female employees within particular age groups. There is no evidence indicating that benefits information disclosed any specific employee's age or relative age.

Woodman nevertheless contends that "overwhelming" circumstantial evidence supports a conclusion that the defendants must have reviewed Chris–Craft documents containing employee-specific age information before ordering her termination. Appellant's Br. at 29. This "evidence" consists of Woodman's observation that Fox had a strong financial interest in learning the ages of individual Chris–Craft employees in order to evaluate the health and pension plans to which it would succeed through the merger, as well as to avoid age discrimination. Even if we were to agree with Woodman's characterization of Fox's interests, she can only speculate that Fox executives, in fact, reviewed employee-specific age information. The law is "well established that 'conclusory statements, conjecture, or speculation' " are inadequate to defeat a motion for summary judgment. *Opals on Ice Lingerie v. Body Lines, Inc.*, 320 F.3d 362, 370 n. 3 (2d Cir.2003) (quoting *Kulak v. City of New York*, 88 F.3d 63, 71 (2d Cir.1996)); *see Byrnie v. Town of Cromwell Bd. of Educ.*, 243 F.3d at 101.

In fact, plaintiff herself has adduced evidence indicating that defendants did not review employee-specific age information before the merger. Norman Roth, WWOR's Business Manager at the time of Woodman's termination, in an affidavit filed in opposition to defendants' motion for summary judgment, stated that he responded to several pre-merger requests from defendants for employee information, that he could and would have supplied defendants with employees' ages if he had been asked, but that he did not remember defendants ever requesting such information. Similarly, Brian Kelly, Chris–Craft's former General Counsel, stated during his deposition that neither defendants nor any

---

**15.** In some cases, an employee's years of service might necessarily alert a defendant to the fact that her age was well past 40, but because that is not this case, we need not specifically address the point at which such knowledge could reasonably arise.

of their affiliates ever requested employee age information from him.

Woodman insists that her claim of age discrimination is not speculative because it is supported by the expert opinion of Edmund B. Piccolino, a human resources consultant, who in an affidavit states that, in his experience advising merging companies on personnel matters, officials of an acquiring company are generally given access to personnel records of the acquired company and frequently review documents containing employee age information before finalizing a merger. Piccolino, however, concedes that he has "no basis to dispute the sworn contentions by Fox executives that they did not look at any document with age information" regarding Woodman; he simply asserts that he "do[es] not believe it is credible that the information was unavailable." Piccolino Aff. ¶ 13. Plainly, Piccolino's credibility assessment is not proper expert testimony. *See Goodwin v. MTD Prods., Inc.,* 232 F.3d 600, 609 (7th Cir.2000) ("[A]n expert cannot testify as to credibility issues. Rather, credibility questions are within the province of the trier of fact, in this case a jury."); 4 *Weinstein's Federal Evidence* § 702.06 ("The credibility of witnesses is normally an issue left exclusively to the finder of fact, and is an improper subject for expert testimony."). In any event, even if we assume that his account of industry practices would cause a jury to question the credibility of Fox executives, that, by itself, would not constitute significant probative evidence raising a genuine issue of material fact as to defendants' knowledge of Woodman's relative age. As the Supreme Court emphasized in *Anderson v. Liberty Lobby, Inc.,* " 'discredited testimony is not [normally] considered a sufficient basis for drawing a contrary conclusion.' Instead, the plaintiff must present *affirmative evidence* in order to defeat a properly supported motion for summary judgment." 477 U.S. at 256–57, 106 S.Ct. 2505 (alteration in original) (quoting *Bose Corp. v. Consumers Union of United States, Inc.,* 466 U.S. 485, 512, 104 S.Ct. 1949, 80 L.Ed.2d 502 (1984)) (emphasis added); *see Goldhirsh Group, Inc. v. Alpert,* 107 F.3d 105, 109 (2d Cir. 1997) (following *Dyer v. MacDougall,* 201 F.2d 265, 269 (2d Cir.1952) (L.Hand, J.)); *Martin v. Citibank, N.A.,* 762 F.2d 212, 217–18 (2d Cir.1985).

In sum, even when we review the record in the light most favorable to Woodman, we are obliged to conclude that it is devoid of affirmative evidence indicating that defendants reviewed any Chris–Craft records before her termination that made them aware of her age relative to that of the employee to whom her sales responsibilities were transferred.

(b) *General Knowledge Within the Broadcast Community and by Defendants' Employees Not Involved in Woodman's Discharge Decision*

Woodman submits that the district court, in concluding that she had failed to adduce adequate evidence of defendants' knowledge of her relative age, overlooked the fact that a jury could reasonably reject defendants' asserted ignorance on this point in light of circumstantial evidence demonstrating that her age was "well known throughout the industry." Appellant's Br. at 27. As already noted, the possibility that defendants' proffered evidence will be discredited at trial cannot, by itself, permit a plaintiff to avoid summary judgment. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. at 256–57, 106 S.Ct. 2505; *Goldhirsh Group, Inc. v. Alpert,* 107 F.3d at 109; *Martin v. Citibank, N.A.,* 762 F.2d at 217–18; *Dyer v. MacDougall,* 201 F.2d at 269.

It is unclear whether Woodman proffers her purported industry reputation as an older employee only to impeach defendants' denials of knowledge or as affirmative evidence of such knowledge. If the latter, we note that it is primarily Woodman herself who attests to her reputation, but she is hardly competent to testify to how *others* in the broadcast community perceived her age. *See generally* Fed.R.Evid. 602 ("A witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter."); *see also* 3 *Weinstein's Federal Evidence* § 602.02 ("The witness's testimony must be based on events perceived by the witness."). Further, her assertions of "common knowledge" are too conclusory to support a reasonable inference, even at the *prima facie* stage, that the defendants (specifically, the decision-makers who ordered her discharge) actually knew or consciously avoided knowledge of her age relative to that of her replacement. *See generally Williams v. Borough of W. Chester,* 891 F.2d 458, 466 (3d Cir.1989) (noting, in § 1983 action charging police indifference to prisoner's needs, that "common knowledge" evidence cannot defeat summary judgement unless (1) group of persons allegedly possessing information was sufficiently small, (2) disclosure of information was sufficiently recent, and (3) subject of information was sufficiently remarkable that jury could reasonably infer that named defendants actually shared in common knowledge); *see also Hall v. Tollett,* 128 F.3d 418, 426–27 (6th Cir.1997) (noting that § 1983 plaintiff who claimed discharge in violation of First Amendment could not defeat summary judgment by asserting that his political inclinations were "common knowledge" but that he was obliged to adduce some evidence that "defendant actually knew" of his support for rival candidate).

To the extent Woodman cites WWOR's December 13, 1999 press release announcing her promotion to General Sales Manager as evidence of community awareness of her position, we note simply that the document makes no reference to her age and, thus, hardly establishes defendants' knowledge as to that fact. To the extent Woodman relies on an affidavit from Douglas Land, former WWOR General Counsel, attesting to the fact that Woodman told him that personnel at other stations were aware from her appearance that she was over fifty years old, this proffer identifies no admissible evidence. Land cannot testify to Woodman's hearsay declaration, and, as already noted, Woodman cannot testify to how other unidentified individuals in the broadcast community perceived her. *See* Fed.R.Evid. 602; *see also* 3 *Weinstein's Federal Evidence* § 602.02.

In her own affidavit, Woodman reports conversations with two Fox sales managers, Cheryl Cox and Debbie von Ahrens, during which Woodman discussed her age. Assuming, as we must, that a jury were to credit Woodman's account, nothing in the record indicates that either of these Fox employees participated in the defendants' decision to terminate Woodman. To defeat summary judgment, Woodman was obliged to do more than produce evidence that *someone* at Fox knew her age. She was obliged to offer evidence indicating that persons who actually participated in her termination decision had such knowledge. *See Dawson v. Bumble & Bumble,* 398 F.3d 211, 224–25 (2d Cir.2005) (holding that plaintiff could not "base a claim of sexual orientation discrimination on [co-workers'] alleged comments" without evidence that supervisor consulted coworkers regarding termination decision); *McLee v. Chrysler Corp.,* 109 F.3d 130, 137 (2d Cir. 1997) (holding that evidence of one super-

visor's racial bigotry provided "no basis for imputing ... an invidious motivation" to another supervisor who actually made the discharge decision). Because Woodman fails to offer any evidence indicating that Cox or von Ahrens ever communicated what they knew of her age to any Fox decision-maker, Woodman's account of their conversations cannot, by itself, support an inference that the circumstances of her discharge indicate age discrimination.

### (c) Deficiencies in the Release Agreements

Woodman submits that the EEOC's findings of legal deficiencies in release agreements signed by herself and other Chris–Craft employees to secure severance benefits support an inference that defendants knew that she was in the ADEA protected class. We disagree.

Woodman's argument is based on the fact that an earlier version of these release agreements had specifically referenced ADEA claims among the statutory rights waived. She asserts that defendants' deletion of any reference to the ADEA in the final releases, as well as their failure to provide information required by the OWBPA, see 29 U.S.C. § 626(f), particularly a list of the job titles and ages of employees from whom releases were sought, see id. § 626(f)(1)(H)(ii), supports an inference that defendants knew the terminated employees' ages and wished to conceal from them facts pertinent to pursuit of ADEA claims.

■ Like the district court, we conclude that plaintiff's hypothesis is mere "speculation ... too thin to support an inference" that defendants knew plaintiff's protected status at the time of her discharge and discriminated against her on the basis of age. Woodman v. WWOR–TV, Inc., 293 F.Supp.2d at 387; see Bickerstaff v. Vassar Coll., 196 F.3d at 448 (recognizing court's obligation to distinguish evidence allowing for reasonable inference of discrimination and evidence that gives rise to mere speculation and conjecture). Neither OWBPA nor any other law requires employers to know or compile employee age information to effect a lawful discharge. It provides simply that an ADEA waiver cannot be valid unless the employer complies with specified statutory duties, including disclosure of the ages of the employees from whom waivers are sought. See Tung v. Texaco, Inc., 150 F.3d 206, 209 (2d Cir.1998) (holding employee's waiver of ADEA claim not knowing and voluntary because employer failed to comply with OWBPA requirements). In this light, the failure of the releases at issue to reference the ADEA or comply with the OWBPA is not "significantly probative" evidence that defendants knew that the discharged employees were protected by the ADEA. Anderson v. Liberty Lobby, Inc., 477 U.S. at 249–50, 106 S.Ct. 2505 (noting that, "[i]f the evidence is merely colorable, or is not significantly probative, summary judgment may be granted"). Omission could as easily reflect defendants' lack of knowledge as to the ages of Woodman and the other discharged employees' and defendants' willingness to forego ADEA waivers rather than delay finalization of the merger while they compiled the necessary information and afforded discharged employees the consideration times required by OWBPA.

In any event, as we have already observed, evidence that defendants generally knew that Woodman was in the ADEA protected class would not, by itself, give rise to an inference of discriminatory intent. For the circumstances of Woodman's discharge to support such an inference, Woodman was obliged to adduce some admissible evidence indicating defendants' knowledge as to a significant dis-

parity between her age and that of the employee to whom her duties were transferred. Neither the release omissions nor any other evidence in the record indicates such knowledge.

Accordingly, like the district court, we conclude that Woodman has failed to demonstrate that the circumstances of her discharge give rise to a reasonable inference of age discrimination as necessary to establish a *prima facie* case.

c. *Chris–Craft's Knowledge of Woodman's Age Cannot Be Imputed to Defendants Either on a Joint–Employer or Successor–Liability Theory*

■ Woodman submits that Chris–Craft and Fox are appropriately viewed as her "joint-employer" in the weeks preceding the merger, so that Chris–Craft's undisputed knowledge of her age at the time of termination can properly be imputed to Fox. We agree that the evidence, viewed in the light most favorable to plaintiff, could support a finding of a joint-employer relationship. *See NLRB v. Solid Waste Servs., Inc.,* 38 F.3d 93, 94 (2d Cir.1994) (*per curiam*) (holding that "[a] joint employer relationship may be found to exist where there is sufficient evidence that [one entity] had immediate control over the other company's employees" and identifying "commonality of hiring, firing, discipline, pay, insurance, records, and supervision" as "relevant factors") (citing *Clinton's Ditch Coop. Co. v. NLRB,* 778 F.2d 132, 137 (2d Cir.1985)); *see also Zheng v. Liberty Apparel Co.,* 355 F.3d 61, 66 (2d Cir. 2003) (directing district court to apply "economic reality" test to determine whether independent entities function as plaintiff's "joint employer" under FLSA). Nevertheless, Chris–Craft's knowledge of Woodman's age cannot reasonably be imputed to Fox unless Chris–Craft communi-

cated that information to the Fox decision-makers who actually made the discharge decision or unless Chris–Craft itself played a decision-making role in that discharge. As we recently explained in *Dawson v. Bumble & Bumble,* 398 F.3d at 224–25, an employer's intent to discriminate must be evaluated by reference to the decision-maker actually ordering the adverse employment action, not to other persons in the company. *See also McLee v. Chrysler Corp.,* 109 F.3d at 137. For reasons already discussed, we conclude that Woodman has failed to adduce evidence of any communication from Chris–Craft to Fox decision-makers that revealed her age. Further, no record evidence supports a finding that Chris–Craft played a decision-making role in Woodman's termination. As Woodman herself acknowledges, Chris–Craft's actions were limited to "do[ing] Fox Group's bidding." Appellant's Br. at 21 n. 5.

■ Alternatively, Woodman submits that Chris–Craft itself violated the ADEA when it carried out Fox's termination order and that Fox assumed this liability as Chris–Craft's successor following the merger. The argument merits little discussion. For Chris–Craft's effectuation of Fox's discharge order to constitute an ADEA violation, plaintiff must produce some evidence to support inferences (1) that Fox acted with age discriminatory intent in ordering Woodman's termination and (2) that Chris–Craft knew or should have known of Fox's unlawful motivation. *See generally America's Best Quality Coatings Corp. v. NLRB,* 44 F.3d 516, 523 (7th Cir.1995). For reasons already discussed, Woodman's case fails at the first step. Indeed, if she could satisfy this burden, she would not need to carry the second, because she would have established a *prima facie* case of age discrimination directly against Fox, without need to consid-

er its successor liability for Chris–Craft's conduct.

Accordingly, we conclude that neither a joint-employer nor successor-liability theory permits Woodman to satisfy her burden at the *prima facie* stage in the absence of some evidence that defendants' termination decision was made with knowledge of the fact that she was substantially older than the WNYW employee to whom her job responsibilities were transferred.

### III. *Conclusion*

To summarize, we conclude that, in a discriminatory treatment case, an ADEA plaintiff who is replaced by a significantly younger worker must offer some evidence of a defendant's knowledge as to the significant age discrepancy to support a *prima facie* inference of discriminatory intent. Because the employer's knowledge as to the relative ages of the employees being compared is frequently undisputed, courts generally need not address the issue. But where, as in this case, defendants raise a knowledge challenge in moving for summary judgment, plaintiff must adduce some evidence on the issue to carry her *prima facie* burden. Because plaintiff failed to adduce admissible evidence raising a triable issue of fact as to defendants' awareness of her age relative to that of the employee to whom her responsibilities were transferred, the district court's award of summary judgment in favor of defendants is AFFIRMED.