# In the
# United States Court of Appeals
## For the Seventh Circuit

———————

Nos. 04-1102 & 04-1464

CHARLES P. OLSON,

*Plaintiff-Appellant,*

v.

NORTHERN FS, INC.,

*Defendant-Appellee.*

———————

Appeals from the United States District Court
for the Northern District of Illinois, Western Division.
No. 02 C 50147—**Philip G. Reinhard**, *Judge.*

———————

ARGUED SEPTEMBER 9, 2004—DECIDED OCTOBER 22, 2004

———————

Before EASTERBROOK, EVANS, and SYKES, *Circuit Judges.*

EVANS, *Circuit Judge.* Early in 2001, Northern FS took a chance when it hired Jacob Bloome, a 22-year-old without any sales experience, to replace Chuck Olson, who had won several sales awards in his more than 40 years with the company, as its new crop salesman. The fact that Bloome's supervisor described his performance as "substandard" in his 2 years as a crop salesman (Bloome no longer works for Northern FS) allows us to conclude that the company likely made a bad decision. Whether the decision was also an illegal one, however, is a closer call. Having considered the case, we think it should be resolved at a trial, rather than at the summary judgment stage where Olson's age discrimination claim came up a loser in the district court.

Olson began selling seeds, fertilizer, and feed in 1960 for the company that, after various reorganizations, eventually became Northern FS. Beginning in 1991, Olson sold grain buildings and equipment for 3 years before returning to crop sales. Olson won the company's annual sales award in 1996 and 1997 before returning to building sales from 1997 until Northern FS stopped selling buildings in 2000.

Olson spent February to October 2000 answering phones and working in the warehouse of a Northern FS plant. In August of that year, Steve Keelen, who had supervised Olson's sales route in the mid-1990's before leaving the company, returned to Northern FS and met with Olson about Olson's future with Northern FS. Olson claims Keelen told him that, despite his experience, Olson was undesirable in the business world because of his age. Olson says he repeated Keelen's remark to Keelen's secretary on his way out of Keelen's office.

The following month, a crop sales position suddenly opened. At Keelen's request, Olson and John Nienhuis filled the void. Although Keelen contends he told Olson and Nienhuis that the assignment was temporary, Olson claims he thought the assignment was permanent, and Nienhuis denies that Keelen ever told them that the assignment was temporary.

On the day Northern FS hired Bloome, Keelen took Olson off his sales route and moved him back into the warehouse. Later, Keelen approached Olson about driving a truck for Northern FS or spraying fertilizer. But Olson could not drive a truck because of eye problems, and neither side ever mentioned the possibility of spraying fertilizer again. On January 19, 2001, 11 days after Bloome was hired, Northern FS fired Olson. At the time of his termination, Olson was 59 years old and had spent 41 years with Northern FS and its predecessors.

Olson filed an age discrimination charge with the EEOC, claiming Northern FS had discriminated against him in violation of the Age Discrimination in Employment Act, 29 U.S.C.

§ 621 *et seq.* After the EEOC found reasonable cause to believe Northern FS had discriminated against him, Olson filed suit. But the district court granted Northern FS's motion for summary judgment, finding that Olson failed to provide sufficient evidence that his age was a motivating factor in his firing.

We review the district court's grant of summary judgment *de novo*, viewing all facts and drawing all reasonable inferences in Olson's favor. *Bellaver v. Quanex Corp.*, 200 F.3d 485, 491-92 (7th Cir. 2000). As we have said many times, summary judgment is appropriate if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S. Ct. 2548 (1986).

A plaintiff can prove discrimination under the ADEA by presenting direct or circumstantial evidence that an employer took an adverse job action against him because of his age (the direct method) or "by constructing a 'convincing mosaic' of circumstantial evidence that 'allows a jury to infer intentional discrimination by the decisionmaker' " (the indirect method). *Cerutti v. BASF Corp.*, 349 F.3d 1055, 1060-61 (7th Cir. 2003) (quoting *Troupe v. May Dep't Stores Co.*, 20 F.3d 734, 736 (7th Cir. 1994)). The district court rejected Olson's claims on both counts, finding that Keelen's statement that Olson's age made him undesirable in the business world was merely a "stray remark" and that Olson could not establish a *prima facie* case under the indirect method because he and Bloome were not similarly situated.

We have found a statement to be direct evidence of discriminatory intent where the statement was made around the time of and in reference to the adverse employment action. *See Hunt v. City of Markham, Ill.*, 219 F.3d 649, 652 (7th Cir. 2000). As the district court noted, Keelen's remark came 5 months before Olson's termination and was not made

in direct reference to the firing. Therefore, it was not, as we have required, "an admission by the decision-maker that his actions were based upon the prohibited animus." *Cerutti*, 349 F.3d at 1061 (quoting *Rogers v. City of Chicago*, 320 F.3d 748, 753 (7th Cir. 2003)).

The district court's error, however, was ignoring Keelen's remark when evaluating Olson's claim under the indirect method set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817 (1973). Instead, the district court noted that, generally, to establish a *prima facie* case of employment discrimination under the indirect method, a plaintiff must show: (1) he was a member of a protected class; (2) he was meeting his employer's legitimate job expectations; (3) he suffered an adverse employment action; and (4) similarly situated employees not in the protected class were treated more favorably. *Koski v. Standex Int'l Corp.*, 307 F.3d 672, 676 (7th Cir. 2002). Since both sides agreed that Olson met the first three requirements, the district court based its grant of summary judgment on its conclusion that Olson and Bloome were not similarly situated because they had different academic credentials.

In its rigid adherence to *Koski* and *McDonnell Douglas*, however, the district court skirts the ultimate question—whether age was a motivating factor in the decision to fire Olson. *See Hazen Paper Co. v. Biggins*, 507 U.S. 604, 610, 113 S. Ct. 1701 (1993) ("[L]iability depends on whether the protected trait (under the ADEA, age) actually motivated the employer's decision."); *see also U.S. Postal Service Bd. of Govs. v. Aikens*, 460 U.S. 711, 715, 103 S. Ct. 1478, 1482 (1983) ("The 'factual inquiry' in a Title VII case is '[whether] the defendant intentionally discriminated against the plaintiff.' . . . The *prima facie* case method established in *McDonnell Douglas* was 'never intended to be rigid, mechanized, or ritualistic.' ") (citations omitted). In an attempt to better reach the ultimate question of when, as here, an employee within the protected class has been discharged and

replaced, we have required that the employee show only that "he was performing his job to the employer's legitimate expectations" and that the employer "hired someone else who was substantially younger or other such evidence that indicates that it is more likely than not that his age . . . was the reason for the discharge." *Robin v. Espo Eng'g Corp.*, 200 F.3d 1081, 1089-90 (7th Cir. 2000). *See also O'Connor v. Consolidated Coin Caterers Corp.*, 517 U.S. 308, 313, 116 S. Ct. 1307, 1310 (1996) ("[T]he fact that a replacement is substantially younger than the plaintiff is a far more reliable indicator of age discrimination than is the fact that the plaintiff was replaced by someone outside the protected class.").

Olson presented evidence showing that his job performance was satisfactory (Jeff Kimmel, the facility manager of the plant where Olson worked, said that Olson had done a good job as a crop salesman) and that Northern FS hired someone substantially younger to replace him, even though Bloome had no sales experience and, according to Kimmel, was not more qualified than Olson. Those facts, coupled with Keelen's remark, stray or otherwise, that Olson was undesirable because of his age, are sufficient to let a jury decide whether Olson's age actually played a role in Northern FS's decision to terminate his employment.

The district court found that, even if Olson presented a *prima facie* case, he did not present evidence that Northern FS's explanation—that Keelen did not know Olson was interested in a permanent position as a crop salesman—was pretextual, as required by *McDonnell Douglas*. But, again, a reasonable trier of fact could look at Keelen's remark and at Northern FS's unusual decision to hire someone with no sales experience to replace an experienced, highly successful salesman and determine that Keelen's explanation was pretextual. *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143, 120 S. Ct. 2097, 2106 (2000) ("[T]he trier of fact may still consider the evidence establishing the

plaintiff's *prima facie* case 'and inferences properly drawn therefrom . . . on the issue of whether the defendant's explanation is pretextual.' ") (quoting *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 255 n.10, 101 S. Ct. 1089 (1981)). For these reasons, we REVERSE the district court's judgment and REMAND the case for further proceedings.

A true Copy:

Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*