**UNPUBLISHED ORDER**
Not to be cited per Circuit Rule 53

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois  60604**

Argued June 14, 2005
Decided November 23, 2005

**Before**

Hon. DIANE P. WOOD, *Circuit Judge*

Hon. ANN CLAIRE WILLIAMS, *Circuit Judge*

Hon. DIANE S. SYKES, *Circuit Judge*

No. 04-2569

| | |
|---|---|
| CONNIE M. GULLETT,<br>　　　*Plaintiff-Appellant,* | Appeal from the United States District<br>Court for the Central District of Illinois. |
| *v.* | No. 02 C 1305 |
| TOWN OF NORMAL, ILLINOIS,<br>　　　*Defendant-Appellee.* | Michael M. Mihm,<br>*Judge.* |

**O R D E R**

After she was turned down for a full-time public works job, Connie Gullett sued the Town of Normal, Illinois ("the Town"), under Title VII, 42 U.S.C. §§ 2000e *et seq.*, asserting disparate treatment and disparate impact sex discrimination claims.  The district court granted summary judgment for the Town, holding that Gullett lacked evidence of intentional discrimination or a policy disparately impacting women.  We affirm.

## I.  Background

Between 1996 and 2001, Gullett worked seven months of the year as a seasonal Street Maintenance Specialist for the Streets Division of the Public Works Department in the Town of Normal.  She helped repair streets and remove snow,

leaves, and trees.  Alan Slagell, who had been her coworker and friend when she was a municipal leaf raker in 1995, became her supervisor in 1996.

While a seasonal employee, Gullett unsuccessfully sought full-time, nonseasonal jobs in the Public Works Department.  Twice she applied for jobs with the Waste Division.  She also applied twice for full-time positions as a Street Maintenance Specialist, but each time a man with experience in the Waste Division was hired instead.  In 2001 Gullett applied again for a position as a full-time Street Maintenance Specialist and was again passed over.  A hiring panel—comprised of Slagell; his assistant supervisor, Kenny Wey; and the Town's Human Resources Director, Jose Garibay—instead hired Eric Perry, an employee in the Waste Division.

Perry's hire prompted Gullett to file a charge of discrimination with the Equal Employment Opportunity Commission.  She claimed that she was more qualified than Perry but that he was hired because he is male.  She also claimed that the Town had a policy of hiring full-time street employees exclusively from the all-male Waste Division.  She filed this suit after receiving a right-to-sue letter, and the parties filed cross-motions for summary judgment.

With respect to her claim of disparate treatment, Gullett argued that Slagell dishonestly steered the panel into hiring Perry, even though she was better qualified.  As proof that she was the stronger candidate, Gullett submitted the deposition testimony of a coworker, Ronald Crow, who stated that as a seasonal worker Gullett had performed all or most of the tasks required for the full-time position.  Gullett also submitted an affidavit from psychologist John Binning, who reviewed the candidates' application materials and the hiring panelists' interview notes and opined that Gullett was the best candidate.

Gullett also contended that Slagell lied to the other hiring panel members about her qualifications.  She pointed to Garibay's interview notes—which include such notations as "limited in abilities" and "WR not very good for seasoned seasonal EE"—and characterized this as evidence that Slagell must have told the panel that she had a "poor work record" and was unqualified.  She also submitted a page from Slagell's interview notes on which he wrote "most qualified," claiming that this notation referred to her; however, Perry is the only candidate mentioned by name on that page of the notes.  Finally, Gullett submitted additional deposition testimony from her coworker Crow, who stated that in the summer of 2000 he overheard Slagell say he was "never going to hire that fucking bitch."  Crow also testified, however, that he only caught bits of this private conversation and just assumed that Slagell was referring to Gullett since she was the only woman working in street maintenance at the time.  Slagell denied making the comment.

The Town did not dispute that Gullett was minimally qualified but instead offered evidence that all three hiring panel members deemed Perry to be better qualified. Slagell testified that only Perry knew the brush disposal routes and how to operate a bucket truck. Perry was also more experienced in operating certain other equipment and in performing tasks involving hot asphalt, concrete, and excavations. Wey knew both Gullett and Perry and thought Perry was more a "self-starter." Garibay explained that Perry was among his top choices and that he ultimately voted for him because Slagell and Wey thought he was the best choice. The district court entered summary judgment for the Town on the disparate treatment claim because there was no evidence that Slagell was the functional decision-maker or that Perry was hired for any reason other than that he was better qualified.

As for her claim of disparate impact, Gullett attempted to show that the Town had a policy of filling full-time positions for Street Maintenance Specialists from the all-male ranks of the Waste Division. To this end, Gullett produced deposition testimony by Crow and another coworker indicating that Slagell told part-time workers that only applicants with experience in the Waste Division would be hired as full-time Street Maintenance Specialists. Both coworkers expressly conceded, however, that they understood this to be only Slagell's preference, not official municipal policy. Gullett also pointed to the fact that the last four individuals hired as full-time Street Maintenance Specialists were from the Waste Division; Binning opined that this "statistic" demonstrated disparate impact on women. The Town responded with testimony from Slagell and Garibay that the hiring panel had no such policy and did not exclude candidates from outside the Waste Division. Slagell admitted that in the years before 2001, *he* preferred to hire Waste Division employees when all else was equal because, in his view, waste carriers had paid "their dues." But this was only his personal preference; in fact, the panel interviewed seven people for the job at issue here, four of whom were from outside the Waste Division. The district court concluded that Slagell's preference did not amount to an official policy, and even if it did, Binning's extrapolation of discriminatory impact from the mere fact of four successive hires from the Waste Division was insufficient to sustain a disparate impact claim.

## II. Discussion

We begin with Gullett's claim of disparate treatment. She proceeded under the indirect burden-shifting approach of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), and thus was required to show that she belongs to a protected class, was qualified for the position, and was passed over in favor of a similarly situated person outside the protected class. *See Grayson v. City of Chicago*, 317 F.3d 745, 748 (7th Cir. 2003); *Millbrook v. IBP, Inc.*, 280 F.3d 1169, 1174 (7th Cir. 2002). The Town conceded these prima facie elements, but argues that the

undisputed evidence establishes that Perry was hired because of his superior experience and that this nondiscriminatory reason shifted the burden back to Gullett to introduce evidence of pretext. *Millbrook*, 280 F.3d at 1174. Gullett cannot discharge this burden merely by showing herself qualified for the job; pretext can be established only if the disparity between the plaintiff and the person hired is so great that no reasonable person could disagree that the plaintiff was better qualified. *Cichon v. Exelon Generation Co.*, 401 F.3d 803, 813 (7th Cir. 2005); *Millbrook*, 280 F.3d at 1180. Employers are entitled to rely on subjective criteria when deciding who is more qualified for a job, *Cichon*, 401 F.3d at 813; *Millbrook*, 280 F.3d at 1176; here, Gullett's evidence was not enough to show she was unquestionably better qualified than Perry. Gullett offered nothing to counter Slagell's assertion that Perry had a superior working knowledge of certain equipment and greater experience with some significant responsibilities of the position. Gullett's disparate treatment claim, therefore, depends on whether there is evidence demonstrating that the decision-maker did not honestly believe Perry was better qualified for the position. *See Millbrook*, 280 F.3d at 1178–82.

Gullett concedes she has no evidence of dishonesty by anyone but Slagell, so she argues that he effectively made himself the "sole" decision-maker by misleading the other members of the hiring panel about her qualifications. A Title VII plaintiff may show pretext with evidence that an employee harboring discriminatory animus prompted a challenged employment action by providing the decision-maker with false information. *Little v. Ill. Dep't of Revenue*, 369 F.3d 1007, 1015–16 (7th Cir. 2004); *David v. Caterpillar, Inc.*, 324 F.3d 851, 861 (7th Cir. 2003); *Wallace v. SMC Pneumatics, Inc.*, 103 F.3d 1394, 1400 (7th Cir. 1997). But here Gullett produced no evidence to show that Slagell lied to the hiring panel.

Gullett points primarily to one dubious piece of evidence: the "most qualified" notation that appears on a page of Slagell's interview notes. As we have noted, however, Perry is the only applicant whose name appears on this page of Slagell's interview notes; we are at a loss to understand how Gullett reads into this document a conclusion that Slagell believed that Gullett, not Perry, was "most qualified" yet told the hiring panel otherwise. No reasonable trier of fact could draw this conclusion.

Gullett's remaining evidence is even weaker and does nothing to undermine the grant of summary judgment. Gullett maintains that Slagell's deposition testimony admitting that she was an "average" or "good" worker contradicts his purported comments to the hiring panel about Gullett's "poor work record." But there is no evidence that Slagell ever told the panel that Gullett had a poor work record. Garibay's notes indicate *his* conclusion that Gullett's "WR [is] not very good" for a "seasoned seasonal EE." Although Garibay relied at least in part on information from Slagell and Wey, Gullett offered no proof that Garibay's

conclusion was based on false information from Slagell.  Gullett also contends that Slagell's past favoritism toward Waste Division employees establishes that he was not being truthful about her qualifications.  It is unclear how Slagell's admitted past preference for Waste Division employees is evidence that he misled the hiring panel about Gullett's qualifications.  In any event, it is undisputed that the hiring panel—which interviewed several people who never worked for the Waste Division—disavowed any such preferential policy in the selection of Perry.

Regardless, given that employers may use subjective hiring criteria, *Millbrook*, 280 F.3d at 1176, Gullett has not explained what would be pretextual about preferring individuals with prior experience in the Waste Division.  *See Schaffner v. Glencoe Park Dist.*, 256 F.3d 616, 620–21 (7th Cir. 2001) (holding that applicant whose bachelor's degree was not in concentration required by employer was unqualified for promotion to full-time job despite claim of equivalent work experience); *Guerrero v. Ashcroft*, 253 F.3d 309, 313–15 (7th Cir. 2001) (holding that FBI's legitimately preferred agents with recent experience in drug investigation and who possessed "'street' skills" instead of "administrative skills" when deciding whom to promote to supervisory post); *see also Gusewelle v. City of Wood River*, 374 F.3d 569 (7th Cir. 2004) (municipal residency requirement).  In making this argument, Gullett is essentially conflating her disparate treatment and disparate impact claims.  Had the Town premised its selection of Perry on a policy of hiring full-time street workers only from the Waste Division, that policy would have constituted a legitimate, nondiscriminatory reason unless Gullett could show it was a pretext for discrimination.  The fact that a policy or practice may have a disparate impact on a protected class is irrelevant to a disparate treatment claim. *Raytheon Co. v. Hernandez*, 540 U.S. 44 (2003).

Finally, the evidence that Gullett's coworker, Crow, overheard Slagell say that he would "never hire" that "fucking bitch" is also insufficient to make Gullett's case.  First, the statement was made some five months before the hiring decision in question, and the circumstances surrounding it are somewhat ambiguous—Crow only assumed that Slagell was referring to Gullett because she was the only woman at the time working for the Streets Division.  Regardless, a stray remark made months ahead of a hiring decision does not constitute direct evidence of discriminatory animus.  *Olson v. Northern FS, Inc.*, 387 F.3d 632, 635 (7th Cir. 2004); *see also Cowan v. Glenbrook Sec. Servs., Inc.*, 123 F.3d 438, 444 (7th Cir. 1997) (citing *Price Waterhouse v. Hopkins*, 490 U.S. 228, 277 (1989) (O'Connor, J., concurring)).  A single remark *may* constitute indirect evidence of pretext in some cases, *Olson*, 387 F.3d at 635–36, but this one (assuming it was about Gullett) appears to express strong personal dislike rather than sex-based animus, especially considering that Gullett herself says that she and Slagell were once friends but had a falling out sometime after 1996.  *Cf. Galloway v. Gen. Motors Servs. Parts Operations*, 78 F.3d 1164, 1168 (7th Cir. 1996) (explaining that "bitch" does not

always trigger inference of sex discrimination).  We agree with the district court that Gullett has failed to come forward with sufficient evidence to survive summary judgment on her disparate treatment claim.

Gullett's disparate impact claim fares no better.  She argues that the Public Works Department had a policy of hiring full-time Street Maintenance Specialists only from the Waste Division, and that since there were no women in the Waste Division, the policy effectively excluded all women from consideration.  Disparate impact claims arise where employers adopt facially neutral policies or practices that disproportionally affect the members of a protected class.  42 U.S.C. § 2000e-2(k); *Cerutti v. BASF Corp.*, 349 F.3d 1055, 1067 (7th Cir. 2003); *Bennett v. Roberts*, 295 F.3d 687, 698 (7th Cir. 2002); *Vitug v. Multistate Tax Comm'n*, 88 F.3d 506, 513 (7th Cir. 1996).  Here, as we have noted, there was no evidence that the Town had a policy of hiring full-time street workers only from the Waste Division.  According to Gullett's own evidence, the "policy" was really only Slagell's preference.  Summary judgment on Gullett's disparate impact claim was also appropriate.

AFFIRMED.